## I. KUSNETSKY v. SECURITY INSURANCE COMPANY, Appellant.

## I. KUSNETSKY v. OLD COLONY INSURANCE COMPANY, Appellant.

## I. KUSNETSKY v. PHENIX FIRE INSURANCE COMPANY, Appellant.

### Division Two, March 4, 1926.

1. **ESTOPPEL:** Fictitious Name: Knowledge: Acceptance of Benefits. At the time the insurance policies were issued to Middle West Skirt Company and for a long time prior thereto plaintiff was conducting a skirt business under the name of the Middle West Skirt Company; the agents of the defendant insurance companies, who issued the policies and received the premiums, knew he was doing business under that fictitious name, and that he was manufacturing and selling clothing under that name; they knew definitely that he was the sole owner of the company, and they accepted the premiums paid by him with that knowledge, and allowed him to believe he was insured. *Held,* that the defendants are estopped to assert

the invalidity of the policies under Sections 13276, 13279, Revised Statutes 1919, and the court did not err in excluding the evidence showing that plaintiff had never registered or applied to register the name of the Middle West Skirt Company with the Secretary of State.

2. ————: ————: **Fraud: Injury.** The statute requiring one doing business in a fictitious name to register it with the Secretary of State was intended to prevent fraud, but it was not intended to be an instrument of fraud. Its purpose was to prevent concealment and deception, but where defendant insurance companies, with full knowledge that plaintiff was doing business under a fictitious name, issued policies payable to the fictitious company and received the premiums, it would be a gross fraud upon him to permit them to repudiate the burdens of the contracts without showing or attempting to show that they were in fact injured or inconvenienced by his alleged violation of the law.

3. ————: ————: **Insurance Policy: Tender Back of Premiums: Statu Quo.** A tender back of the premiums paid by plaintiff on the policies sued on, after the loss, and made for the purpose of laying a technical ground for evading the contract, is not doing equity, nor placing him *in statu quo*, where the companies permitted him to believe, from the time they accepted the premiums up to the time of the loss, that his property was insured. And where some of the policies were renewals, and no tender was made of the premiums paid on the preceding policies, there was no tender at all, or attempt to place him *in statu quo*.

4. **FICTITIOUS NAME: Unlawful Contract.** The statute (Secs. 13276, 13279, R. S. 1919) declaring it unlawful for any person to engage in or to transact any business under a fictitious name without first registering the same with the Secretary of State does not make void a contract for the transaction of a lawful business entered into by such person with another. It does not declare void any contract made in violation of its terms; it simply affixes a penalty for engaging in business under a fictitious name as for the commission of a misdemeanor. A person who does business under a fictitious name has a right to accept insurance policies in that name upon his property; the undertaking itself is not unlawful, it does not contemplate the performance of an unlawful act, and the contract is not avoided by his failure to comply with the statute, and especially where it has been completely performed on his part.

5. ————: **Constitutional Statute: Gains of Industry.** If the statute prohibited a natural person to engage in a lawful business under a fictitious name it would be violative of that provision of the Con-

stitution (Sec. 4, art. 2) which declares that "all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry." But the statute (Sec. 13276, 13279, R. S. 1919) making it "unlawful for any person to engage in or transact any business under a fictitious name without first registering same with the Secretary of State" does not forbid such a person from buying, selling and insuring his goods, or using a fictitious name under which to trade, nor permit him to be deprived of the gains of any lawful business. It only requires him to register the fictitious name if he uses it, and his violation of it is not in transacting business or in insuring his goods, or in dealing in what belongs to him, but in failing to register the name, for which failure he may be punished as for a misdemeanor.

6. **INSURANCE POLICY:** Attorney Fees: Vexatious Delay. Where the insurance company, in good faith, contests the validity of the policies sued on, not on a question of fact, but on a question of law, and that question is one which has not previously been decided by this court, the insured is not entitled to a judgment allowing him penalties and attorney's fees for vexatious delay. Even though the company's position is considered on appeal as wholly unfounded, and it is further considered that a reasonable consideration of the statute ought to have convinced the company that it afforded no defense to the action, still defendant is allowed to entertain an honest difference of opinion as to its liability and to litigate its defense to a judicial conclusion; and if its position that the statute affords a defense appears to have been taken in good faith, and the statute has not been previously construed, penalties and attorney fees cannot be allowed.

Constitutional Law, 12 C. J., Section 220, p. 787, n. 96; Section 459, p. 945, n. 25; p. 946, n. 35 New. Contracts, 13 C. J., Section 454, p. 507, n. 84. Estoppel, 21 C. J., Section 211, p. 1209, n. 59; p. 1210, n. 64 New. Insurance, 33 C. J., Section 890, p. 151, n. 13. Names, 29 Cyc., p. 270, n. 43.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porter-field,* Judge.

AFFIRMED (*upon condition*).

*Crow & Newman* for appellant.

(1) The court erred in excluding testimony tending to prove that I. Kusnetsky during all the times mentioned

in his petitions, and long prior thereto, had been engaged in transacting a mercantile and manufacturing business in Missouri under a fictitious name without having complied with the law. The policies were issued in a fictitious name; the proofs of loss were made in a fictitious name, and the doing of a manufacturing and mercantile business of which the policies were a part, rendered the policies absolutely void under the statutes if plaintiff was not authorized in accordance with the statute. R. S. 1919, sec. 13276; Downing v. Ringer, 7 Mo. 585; Bernard v. Luffing, 32 Mo. 341; Peltz v. Long, 40 Mo. 532; Kitchen v. Greenabaum, 61 Mo. 110; Sprague v. Rooney, 104 Mo. 349; Connor v. Black, 119 Mo. 126; Cherokee v. Cass, 138 Mo. 394; Haggerty v. Ice Co., 143 Mo. 238; Fair Association v. Carmody, 151 Mo. 566; Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Mill & Lumber Co. v. Sims, 197 Mo. 507; Heller v. Lutz, 254 Mo. 704; Booth v. Scott, 276 Mo. 1; O'Bannon v. Wydick, 281 Mo. 478. (2) The plaintiff alleges and proves that he was engaged in business under the fictitious name of Middle West Skirt Company, and that all his business with all the defendants was transacted under the fictitious name of Middle West Skirt Company, and it devolved upon the plaintiff to show that being engaged in the transaction of business in a fictitious name was lawful and that he was not committing a criminal offense in so doing; and for that reason the peremptory instructions at the close of all the evidence as requested by defendants should have been given. Haggerty v. Ice Co., 143 Mo. 238; State v. Miller, 182 Mo. 370; State v. Lipscomb, 52 Mo. 32; State v. Zehnder, 182 Mo. App. 176. (3) The court clearly erred in instructing the jury that there was evidence authorizing the assessment of penalties and attorney fees, as the question presented in this case had never been litigated prior to the institution of the suit and the defendants had the right to litigate the question without being penalized if unsuccessful. Cooper v. Ins. Co., 253 S. W. 468; National Bank v. Ins. Co., 270 S. W. 691.

*Walsh & Aylward, Frank P. Walsh* and *James P. Aylward* for respondent.

(1) The court did not err in holding plaintiff had a cause of action and in excluding testimony tending to prove that I. Kusnetsky, the plaintiff, was carrying on business under a so-called fictitious name, and in refusing to direct the verdict for appellants on the theory that the contracts of insurance sued upon were thereby rendered void under Sec. 13276, R. S. 1919, providing a penalty for transaction of business under an assumed name for failure to register the same, because the issuance and delivery of the policies did not have for their object the violation of a law and the violation of such act did not constitute any defense to the policies sued on, as the statute did not prohibit him from adopting a fictitious name and trading under it. Moreover, the taking out of a policy of insurance on personal property used in a manufacturing plant is not the carrying on or conduct of a business within the purview of the statute. The rule in this State and the great weight of authorities supporting the same holds that persons doing business in violation of the statute are not thereby precluded from enforcing contracts made by them. The statute being penal does not restrict the right to contract. The penalty imposed thereby being exclusive, no other remedy was open to anyone. Therefore, the violation of the statute is not sufficient to constitute a basis for an action or defense. Bassen v. Monckton, 274 S. W. 406; Ditzell v. Shoecraft, 274 S. W. 883; Reitherman v. Wheeler, 247 S. W. 222; Prince v. Church, 20 Mo. App. 332; Kistenmacher v. Indemnity Co., 273 S. W. 125; Harris v. Runmels, 53 U. S. (12 How.) 79; McArdle v. Thames Iron Works, 89 N. Y. Supp. 485; Kornblum v. Comm. Adv. Assn., 164 N. Y. Supp. 186. (2) The issuance of an insurance policy to a person in a fictitious name, upon property owned by him, does not constitute the conduct or carrying on of a business within the meaning of the statute, as the appellants did not in-

sure the business nor were they concerned in its operation, neither was the issuance of the policy in such name material to the risk.   Engle v. Ins. Co., 75 Pa. Sup. Ct. 390; Loeb v. Fire Ins. Co., 79 N. Y. Supp. 510; Pelican Ins. Co. in Liquidation, 47 La. Ann. 935.   (3)   Appellants are not entitled to the protection of the act as it was not enacted for their benefit.   Kerr v. Bush, 198 Mo. App. 607; Latapie v. Askew Saddlery Co., 193 Mo. 1; Utley v. Hill, 155 Mo. 274; McKey v. Rudd, 220 Mo. 364.   (4)   The cases relied upon by appellants are not in point and the recent decisions of this court and the Courts of Appeal, construing the fictitious-name statute of this State, show that the cases cited by them are not analogous.   Bassen v. Monckton, 274 S. W. 405; Ditzell v. Shoecraft, 274 S. W. 804; Prince v. Baptist Church, 220 Mo. App. 332; Reichardt v. Hill, 236 Fed. 817; Harris v. Runnels, 53 U. S. (12 How.) 79.   (5)   The court did not err in submitting to the jury question as to whether appellants vexatiously refused to pay the loss, because there was evidence sufficient to authorize the assessment of penalties and attorneys' fees.   Fay v. Ins. Co., 268 Mo. 390; Roark v. Surety Co., 130 Mo. App. 409; Kellog v. Ins. Co., 133 Mo. App. 403; Keller v. Ins. Co., 198 Mo. 460.

WHITE, J.—The plaintiff filed three petitions in the Circuit Court of Jackson County, one against each of the insurance companies named.   The case against the Security Insurance Company was stated in three counts; the case against the Old Colony Insurance Company in one count, and the case against the Phoenix Insurance Company in two counts.   All three cases were consolidated and tried as one.

In each count of each petition the plaintiff, at dates mentioned, alleged that he was doing business in Jackson County in Kansas City, Missouri, under the firm name of Middle West Skirt Company, and that the defendant was a corporation engaged in the business of insuring property and authorized to do business in the State of Missouri;

that the defendant for valuable consideration wrote and delivered to plaintiff a fire insurance policy, which was made a part of the petition, whereby it insured the plaintiff against loss or damage by fire. That while said policy was in force, May 28, 1921, the merchandise and stock covered by said Insurance Company was destroyed by fire. The count then set out the value of the property, proofs of loss, amount of total insurance, and proportion which each policy should bear, and alleged that plaintiff had performed all the requirements of his contract of insurance. It further alleged that the defendant had vexatiously failed and refused to pay plaintiff the amount due, and asked judgment for the amount due on the policy, ten per cent damages under a statute for vexatious delay, as penalty, and for attorneys' fees. With the exception of the numbers of the policies, names of the defendants, and amounts demanded, each count of each petition was substantially the same.

Each defendant filed an amended answer alleging that at the date of the issuance of a policy in each case and a few months prior thereto, the plaintiff was conducting a business under the name and style of the Middle West Skirt Company, or Midwest Skirt Company, which was a fictitious name and not the name of a corporation authorized to do business in the State; that the plaintiff at no time applied to the Secretary of State for a license authorizing him to do business under said fictitious name, and that no license or authority at any time was ever issued to plaintiff to transact business under said fictitious name; that prior to the institution of the suit and shortly after the alleged loss, the defendant tendered plaintiff the amount paid as premium on the policy.

Plaintiff filed a reply to each count of each petition, denied such allegations as were not admitted, and alleged further that the defendant was estopped to assert the forfeiture of a policy by reason of matters alleged in the answer; that the defendant at the time of the issuance of the policy and prior thereto knew well that plaintiff was

the sole owner and proprietor of the property insured, and was not misled; that the defendant was informed by the plaintiff of these facts before the issuance of the policy, which it solicited, knowing that it was intended to insure the property owned by I. Kusnetsky, and any defense it might have had was thereby waived; if plaintiff had not complied with the law, which he denied, defendant was estopped to assert the forefeiture and avoidance of the policy. It is further averred in each reply that Sections 13276 to 13280, Revised Statutes 1919, were unconstitutional in contravention of certain sections of the Constitution of the United States and of the State of Missouri.

Plaintiff offered evidence to show the value of the property destroyed, that the matter was adjusted with the Underwriters Adjusting Company and the adjuster for plaintiff, and the amount sued for was the loss determined by such adjusters.

The evidence showed that at the time the policies were issued and at all the times mentioned, plaintiff was conducting the skirt business under the name of the Middle West Skirt Company; the policies were issued in that name; that after the loss and before the institution of the suits the defendants tendered to the plaintiff the premiums received.

Evidence also was offered without contradiction to prove that at the time of the issuance of the policies and for a long time prior thereto defendants' agents who issued the policies knew that Kusnetsky was doing business under the name of the Middle West Skirt Company, and that he was manufacturing and selling clothing under that name.

The defendants offered to prove that plaintiff had never made application to the Secretary of State for permission to do business under that fictitious name, and was never registered by that name. Upon objection of plaintiff that evidence was excluded. It was admitted that after the suit was started defendant deposited with the clerk the full amount of the premiums, with the costs that had accrued.

There was judgment for the plaintiff against each of the defendants on each and every count of each petition. The amounts for which judgments were rendered against the defendants were as follows:

| | |
|---|---:|
| Phenix Fire Ins. Co., first count, principal and interest | $2704.75 |
| Phenix Fire Ins. Co., first count, penalty | 250.00 |
| Phenix Fire Ins. Co., first count, attorney fees | 500.00 |
| Phenix Fire Ins. Co., second count, principal and interest | 5409.50 |
| Phenix Fire Ins. Co., second count, penalty | 500.00 |
| Phenix Fire Ins. Co., second count, attorney fees | 1000.00 |
| Old Colony Ins. Co., principal and interest | 3245.70 |
| Old Colony Ins. Co., penalty | 300.00 |
| Old Colony Ins. Co., attorney fees | 600.00 |
| Security Ins. Co., first count, principal and interest | 540.95 |
| Security Ins. Co., first count, attorney fees | 100.00 |
| Security Ins. Co., first count, vexatious delay | 50.00 |
| Security Ins. Co., second count, principal and interest | 649.14 |
| Security Ins. Co., second count, attorney fee | 120.00 |
| Security Ins. Co., second count, vexatious delay | 60.00 |
| Security Ins. Co., third count, principal and interest | 2704.75 |
| Security Ins. Co., third count, attorney fees | 500.00 |
| Security Ins. Co., third count, vexatious delay | 250.00 |

The defendants appealed from all the judgments, and the cases were heard here as one.

I. Appellants assign error to exclusion by the court of evidence showing that plaintiff had never registered or

applied to register the name of Middle West Skirt Company with the Secretary of State, on the ground that a contract of insurance in the absence of such registration is void, under Sections 13276 and 13279.

*Estoppel.*

The construction of these statutes has been under consideration by this court in two recent cases, and by the Kansas City Court of Appeals in two recent cases. [State ex rel. Nolen v. Nelson, 310 Mo. 526, 275 S. W. 927; Bassen v. Monckton, 274 S. W. 404; Ditzell v. Shoecraft, 274 S. W. 880 (K. C. Ct. App.); Reitherman v. Wheeler, 247 S. W. 222.] The last case decided by this court en banc was State ex rel. Nolen v. Nelson. There the party, a corporation, which claimed that a contract was void because of the failure to register a fictitious name, knew the parties it was contracting with and accepted the benefits of the contract with knowledge that they were operating under a fictitious name. It was held that it was estopped to deny the validity of the contract. The same conclusion was suggested in the Bassen case, supra. In the present case it was shown without contradiction that the defendant insurance companies through their agents knew definitely that Kusnetsky was sole owner of the Middle West Skirt Company. They dealt with him with that knowledge, wrote policies with that knowledge, accepted the premiums paid by him with that knowledge, and allowed him to believe he was insured. They received the benefits of the contract which they claim was void and by their conduct induced plaintiff to act to his prejudice. They are therefore estopped to assert its invalidity.

It is earnestly argued by counsel for appellants here that the statute is intended to *prevent* fraud. Exactly. The particular fraud in contemplation undoubtedly was the deception of persons dealing with any institution trading under a name other than the actual name of the owners. One could hardly imagine any kind of a fraud which the statute would prevent other than that permitted by such concealment. When the defendants, with

Kusnetsky v. Insurance Co.

full knowledge of the facts, made the contracts sued on, it would be a gross fraud upon the plaintiff to permit them to repudiate the burdens of the contracts without showing or attempting to show that they were in fact injured or inconvenienced by reason of the alleged violation of the law on the part of the plaintiff. The statute was not intended to be an instrument of fraud.

Appellants may claim that they received no benefits from the contract because they tendered back the premiums which were paid. So they did, *after the loss,* but during all the time prior thereto they permitted the plaintiff to believe that he was insured. The policies ran on without complaint or suggestion that his contract was not in full force and his property covered by their policies. It is said that some policies had expired and the policies in suit, or some of them, were renewals. The defendants did not tender the premiums paid on the policies which had run out. They tendered only premiums on those on which their liability had accrued, and made that tender, not for the purpose of doing equity, or placing the plaintiff *in statu quo,* but for the purpose of laying a technical ground to evade their contracts. There was no way by which they could put plaintiff *in statu quo.* So, under the ruling in the Nelson case the defense of estoppel was fully estabished.

II. Since the appellants argue the question we will consider whether the sections of the statute under consideration would make the contract void regardless of the estoppel. Appellants rely upon the general rule Lawful that no action can be maintained upon a contract Business: which is forbidden by the statute; that such a Valid Contract. contract is void. [Livestock Assn. v. L. & C. Co., 138 Mo. 394, l. c. 406.] The statute under consideration here does not declare void any contract made in violation of its terms. Sections 13276 and 13279 are as follows:

"Section 13276. *Fictitious names*. That every name under which any person shall do or transact any business in this State, other than the true name of such person, is hereby declared to be a fictitious name, and.it shall be unlawful for any person to engage in or transact any business in this State under a fictitious name without first registering same with the Secretary of State as hereinafter required.

"Section 13279. *Penalty for failure to register*. Any person who shall engage in or transact any business in this State under a fictitious name, as in this article defined, without registering such name as herein required shall be deemed guilty of a misdemeanor."

As we held in Bassen v. Monckton, supra, the statute does not in terms, nor by implication, make void a contract entered into by a party under a fictitious name, but affixes a penalty for the violation of the statute as for the commission of a misdemeanor. While the court will not lend its aid to a person who founds his action on a. contract which contemplates the violation of law, nevertheless, where a contract, not prohibited by law, has been fully executed by the person who seeks to enforce it, he may recover from the person receiving the benefit, although in rendering the service he was guilty of a misdemeanor. That was clearly stated in the case of Smythe v. Hanson, 61 Mo. App. 1. c. 287-288. Apply that principle to the facts in this case. What law was the plaintiff violating by accepting the policies of insurance on his property? It was his property. That is not disputed. He had a right to protect it by insurance or by putting it in a fireproof vault.

In the case of Ditzell v. Shoecraft, 274 S. W. 880, Arnold, J., of the Kansas City Court of Appeals, in a very thoughtful and well-considered opinion reviewed the authorities on this question, and thus summarized the result of his research (l. c. 884): "An examination of the Missouri cases relied upon by defendant shows they are all cases where the undertaking itself was forbidden

under the statute, and they are not, therefore, decisive of the case at bar, wherein the undertaking, the acceptance, was in no sense made unlawful by the statute. It is the universal rule, applicable to statutes such as the one here involved, that, where acts sought to be regulated are in themselves lawful, and no qualification therefor required, the penalty is directed only against the person who violates the statute.''

Examination of some of the cases cited by appellant shows their inapplicability to a case like this. They all are where the contract condemned *contemplated the performance of an unlawful act.* Such as the lease of Indian lands, Livestock Assn. v. L. & C. Co., 138 Mo. 394; a bucket-shop gambling contract, Connor v. Black, 119 Mo. 126; Fair Association v. Carmody, 151 Mo. 566, was a race track gambling contract; the sale of lottery tickets, Kitchen v. Greenabaum, 61 Mo. 110; the lease of a premises for a bawdy house, Sprague v. Rooney, 104 Mo. 349.

In the case last cited the court quoted from a former case: ''The principle of public policy is, that no court will lend its aid to a man who seeks to ground his action upon an immoral or illegal act.''

The case of Haggerty v. Ice Co., 143 Mo. 238, involved a violation of the game law. Peltz v. Long, 40 Mo. 533, was upon a note given in consideration of goods sold to the Confederate Army. Bernard v. Lupping, 32 Mo. 341, was for breach of contract to perform labor on Sunday, in violation of law. Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, involved the enforcement of a race track gambling contract.

So, each and every case cited by respondent to sustain his position is where the contract in issue, in and of itself, contemplated a violation of law. There is nothing of that kind in this contract. Applying for an insurance policy and accepting one on property owned, in good faith by the party applying for it, is not an unlawful transaction. If the defendants are correct, see how it would operate: one could buy on credit a car from the

Capital Motor Company; he could get his gasoline and have his car repaired at the Efficiency Garage; he could get his groceries at the Delmonico, his ice cream at the Purity Ice Cream Company, his clothing at the Golden Eagle Clothiers, his milk from the Model Dairy, his bread at the Home Bakery, and, after having worn out and eaten all the stuff thus acquired, without paying for it, he could defeat all suits brought to recover pay, because those names had never been registered. His contracts were void and he owed nothing. And a person who would engage in that enterprise would be, by defendants' code, a righteous citizen enforcing the law because he was guilty of the most nefarious frauds! We discussed the principle at some length in the Bassen case, supra.

The case of State ex rel. v. Cox, 268 S. W. 87, is cited; a case which appellants say is strictly in point. That was an action on an insurance policy, and we held that the plaintiff had no insurable interest in the property destroyed—an automobile—because he had not complied with the statute relating to the transfer of title, which declares that an attempted transfer of title, without compliance with certain conditions, is absolutely void. That was a question of title. The plaintiff had *no title* in the property which he sought to insure. Where certain formalities are required by law, in order that property may be transferred, title does not pass from one to another without compliance with the regulation. The law requires a certain formal contract to convey title to real estate, and title does not pass without compliance with the law. One cannot insure a building on real estate *as owner* unless he owns it. He might insure an equitable interest in it, or something of that sort. The plaintiff in the Cox case might in equity have enforced a legal and formal transfer of the automobile. The opinion does not claim that he had no claim on it, but his claim had not ripened into a title by conforming to the requirements of the law which was intended to protect purchasers against thefts. How

does that compare with this case? It is not disputed that the plaintiff here owned the property insured, or that the defendants *knew* he owned it. He was not attempting to insure something to which he had no title. Owning it, he had a right to insure it whether he traded in it or not. If appellants are correct, plaintiff could not rent a fire-proof vault for his goods, nor enter a contract to have fire extinguishers installed.

III. The respondent contends that the statute, Section 13276, and others, are unconstitutional. As we pointed out in the Bassen case, a statute will not be given a construction which would render it unconstitutional or unreasonable if it is susceptible of a reasonable constrution.

Constitutionality of Statute.

Section 4, Article 2, of the Constitution, declares that "all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry."

It is not within the power of the Legislature to forbid a man to transact any business otherwise perfectly lawful. The statutes leveled at gambling contracts, immoral contracts, and that kind of a thing, could not be made to apply to a moral, lawful, and otherwise harmless contract. The statute could not be enacted which would forbid a man to acquire earnings by honest means and to dispose of them by honest means. The plaintiff in this case owned the property, a fact which cannot be disputed. If any statute were enacted which prohibited him from insuring that property it would be unconstitutional. [State v. Tie & Timber Co., 181 Mo. l. c. 554, 555; 12 C. J. 945; State v. Julow, 129 Mo. 163, l. c. 174; Blum v. N. Y. Life Ins. Co., 197 Mo. 513.] The cases cited by appellant relating to foreign insurance companies are not in point in view of this very constitutional question. In Booth v. Scott, 276 Mo. l. c. 31, the opinion pointed out that the State has plenary power to exclude foreign corporations altogether. Such corporations are intangible entities and exist by the law which creates them. They have no

*natural rights;* the provision that the Constitution cited above does not apply to them. The reasonable and constitutional construction of the statute under consideration shows that it does not forbid the plaintiff to engage in business. He owned his goods. He had a right to own them and he had a right to insure them. No law restricting that natural and constitutional right would be of any validity. The statute did not forbid his buying, selling, and insuring his goods. It did not *forbid* his using a fictitious name under which to trade. The fact that he chose to affix a fictitious name to the transaction could not make unlawful the enjoyment of a perfectly constitutional right. The statute required only that he should *register* a fictitious name if he used it. His violation of the law was not in transacting business or insuring his goods. The law violated was the requirement that he *register,* and he violated the law when he failed to register; the statute fixes a proper penalty for that violation. See Heller v. Lutz, 254 Mo. 704, where this court held that a statute declaring that assignments of wages and salaries not yet earned was constitutional. The court there pointed out (l. c. 717) that *unearned* wages are not property, nor choses in action, and have no potential existence. From the discussion in the opinion it is very clear that a statute which would forbid the assignmnent of *earned* wages would be unconstitutional (l. c. 712).

Cases are cited construing the law requiring a physician to procure a license before he is authorized to practice medicine. [O'Bannon v. Wydick, 281 Mo. 478.] There it is held that where one undertakes to practice medicine without procuring a license therefor, he cannot recover for alleged services rendered. The reason is *he has rendered no service.* He is not a physician until he has passed a satisfactory examination and has a license showing that fact. Such cases are not in point.

IV. The respondent insists upon the correctness of the judgment allowing him the penalties and attorney

fees for the vexatious delay. While, ordinarily, it is a question for the jury to determine whether a defendant was guilty of vexatious delay, under the statute (Sec. 6337, R. S. 1919; Hicks v. Life Ins. Co., 196 Mo. App. l. c. 178; Keller v. Home Life Ins. Co., 198 Mo. l. c. 460), yet the defendant in such case is allowed to entertain an honest difference of opinion as to liability and to litigate the matter in an attempt to establish his conclusion. [Non-Royalty Shoe Co. v. Assur. Co., 277 Mo. 422; Berryman v. Southern Surety Co., 285 Mo. l. c. 397.]

*Vexatious Delay.*

In this case the matter relied upon by appellant was not a question of fact, but a question of law. The facts, so far as they show dilatory tactics, in delaying the trial or in prosecuting appellant's appeal to this court, do not appear unusual. The essential fact upon which the respondent relies is the refusal to pay after the amount of the loss was correctly ascertained. That refusal was based on appellant's construction of the law. While we think appellants' position was wholly unfounded and that a reasonabe consideration of the statute under the authorities ought to have convinced them that the statute afforded no defense to the action, still we are unable to say that their position was not taken in good faith, in an honest belief that there was a fair chance to procure a construction in accordance with their views. These cases were tried and appealed before the Nolen case and the Bassen case were decided. The appellant had not an authoritative construction on these statutes when the cases were appealed. So, we are not prepared to hold that the plaintiff is entitled to enforce the penalties for vexatious delay. Therefore, if the plaintiff, within ten days shall remit the amounts allowed as attorneys' fees and damages, as follows:

From first count in judgment against Phenix

    Fire Insurance Company, the sum of .. $ 750.00

And in the second count against Phenix

    Company, the sum of ..............    1500.00

And from the judgment against the Old
  Colony Insurance Company, the sum of        900.00
And from the judgment against the Security
  Insurance Company, on first count the
  sum of .........................        150.00
And from the second count the sum of ....        180.00
And from the third count the sum of ....        750.00
the judgments will be affirmed.   Otherwise the judgments will be reversed and the cause remanded.   All concur.