WORLD INVESTMENT COMPANY, a Corporation (Plaintiff), Respondent,

v.

William KOLBURT, also known as William Colburt (Defendant),

and

Leonard Berin, d/b/a L. B. Guaranty Motor Company (Defendant), Appellant.

No. 29988.

St. Louis Court of Appeals.
Missouri.

Nov. 5, 1958.

Hinkel & Carey, Henry C. Hinkel, Harold D. Carey, Clifford L. Goetz, St. Louis, for appellant.

Cobbs, Armstrong, Teasdale & Roos, William H. Webster, St. Louis, for respondent.

HOUSER, Commissioner.

Action in replevin brought by World Investment Co. against William Kolburt and Leonard Berin, d/b/a L. B. Guaranty Motor Co. for the possession of a Cadillac automobile. The St. Louis County Circuit Court, on jury waiver, found for plaintiff and against defendant Berin for possession of the property. Berin has appealed from the ensuing judgment.

The pleadings were conventional, each party claiming the right to the immediate possession of the vehicle.

These are the facts, as stipulated by counsel and revealed by documents introduced in evidence:

On Friday evening, March 23, 1956, Kolburt went to the used car lot of the Clinton Cadillac Co. (hereinafter "Clinton") on South Kingshighway in St. Louis. The Cadillac in question was for sale on that lot. The automobile was owned by Lindburg Cadillac Co. (hereinafter "Lindburg"), the main offices of which are at Sarah and Laclede Boulevards in St. Louis. The certificate of title to the vehicle was kept at the main offices of Lindburg. Kol-

burt entered into negotiations with a salesman on the lot relative to the purchase of the automobile. The salesman was an employee of Clinton with authority to show any of the cars on the lot, and to "negotiate the sale" of the automobile in question. Kolburt signed a purchase order. Kolburt's trade-in car plus $50 constituted the down payment. The balance was to be financed by notes secured by a chattel mortgage on the Cadillac. Kolburt also signed a purchase contract and chattel mortgage. Those two agreements were incorporated in the same instrument, a printed form. A description of the Cadillac, the total time price, cash sale delivered price, down payment, cost of insurance, finance charge, time balance, date (April 23, 1956) when monthly instalments should commence, and date of execution (March 23, 1956) were typed in the blank spaces. There were spaces for seller-mortgagee and for buyer-mortgagor to sign. On the reverse side of the instrument, incorporated by reference, was a provision transferring title to the property by mortgagor to mortgagee to secure payment of the purchase price, but to be void upon performance of the obligations assumed by mortgagor. There was a provision authorizing the mortgagee to take possession of the property in the event mortgagor defaults on payments or performance of mortgage conditions. Printed at the bottom of the first page of the instrument was a form for dealer's assignment to World Investment Co. (hereinafter "World") of mortgagee's right, title and interest "under the within purchase contract and in and to the within mortgage * * * and in and to the property * * *," authorizing World to collect the purchase contract and mortgage. Typed in the blank space for the seller-mortgagee's signature on the dealer's assignment were the words "Lindburg Cadillac Company, By ————." There is nothing to show who typed in the blank spaces but presumably this was done either by the salesman or by someone under his direction prior to the time it was signed by

Kolburt. Kolburt signed the chattel mortgage in the proper blank space for the purchaser-mortgagor's signature either on the evening of March 23 or on March 24. Although all of the terms were agreed upon, the salesman did not actually sign the instrument for and on behalf of Lindburg. The instrument, thus partially completed, was either retained by the salesman on March 23 or delivered by Kolburt to the salesman the next day, Saturday, March 24. On March 24 Kolburt delivered his trade-in automobile to the salesman at the Clinton lot, paid the $50, and then and there received delivery of the possession of the Cadillac in question. The main offices of Lindburg were closed on Saturday, March 24, at the time of delivery of the Cadillac to Kolburt. On Monday, March 26, the salesman mailed the papers to Lindburg. Lindburg received them on Tuesday, March 27. On March 27 Lindburg, through its duly authorized agents, office manager, billing clerk, notary public, etc. at its main offices, assigned the certificate of title to the Cadillac to Kolburt, caused the purchase contract portion of the mortgage form and the portion of the form of assigning the mortgage, etc. to World to be completed and signed in ink on its behalf, prepared an invoice to Kolburt, and made out other routine papers, including a title application form. The title papers, completed in Lindburg's offices, were mailed out Tuesday night, March 27. The chattel mortgage was filed for record in the office of the proper recorder of deeds on March 28. In due course Kolburt received a certificate of title in his own name from the Motor Vehicle Department, showing no liens on the automobile. (In the course of the transfer of title to Kolburt someone "X'd out" the notation of a lien in the reassignment space on the reverse side of the title certificate, prepared an application for title and forged the signatures of the Lindburg notary and billing clerk, thus unlawfully procuring the issuance of a title certificate falsely showing that the vehicle was subject to no lien. While the wrong-

doer was not identified it was stipulated that neither Lindburg nor Berin participated in this misconduct). On May 28, 1956 Kolburt assigned the certificate of title to Ric Smith Auto Sales. On June 5 defendant Berin, a used car dealer, negotiated with Ric Smith for the purchase of the Cadillac and Berin acquired possession of the automobile from Ric Smith on that date. As a part of this purchase Berin drew a draft on Wellston Auto Loan Co. payable through a Wellston bank. The draft, dated June 5, was deposited in a trust company on June 7 to the credit of Ric Smith Auto Sales, and subsequently was paid. The draft envelope contained a certificate of title to the automobile dated June 6, naming Ric Smith Auto Sales as owner, showing no liens on the property. The certificate was endorsed in blank by Ric Smith Auto Sales. The notary had filled in the date of the acknowledgment on the assignment of title, the expiration date of his commission, inserted the words "St. Louis" and signed his name, all in proper form, but the notary failed to affix his notarial seal. In this manner the certificate of title was delivered by Ric Smith Auto Sales into the possession of Wellston Auto Loan Co., which held it. Thereafter Kolburt defaulted—failed to make his payments as required by the chattel mortgage —and this replevin suit was instituted by World and the automobile taken from Berin. At the time the replevin suit was instituted the title was registered in the name of Ric Smith Auto Sales, in the certificate which had been assigned in blank by Ric Smith, with no notarial seal affixed. At the time of trial the notarial seal had been impressed on the assignment.

After the trial the automobile was sold and by agreement of the parties the proceeds ($2,995) became the subject-matter of this suit.

In deciding for World the trial court filed a memorandum as follows:

"I believe that everything that happened between the evening of March 23, 1956, and March 28, under the stipulated circumstances, constituted one transaction. The sale transaction was completed on the 27th when the cash balance was made available to the purchaser thru the execution of the mortgage (P. Ex. 2) and the seller executed the re-assignment of the title certificate. The chattel mortgage came into existence on the 27th despite the fact the purchaser attached his signature thereto on the 23rd. The fact that the mortgage was a purchase money mortgage supports the conclusion that the sale and mortgage were simultaneous and constitute one transaction."

Appellant Berin's first point is that the chattel mortgage was void as to Berin since it was executed prior to the assignment of the certificate of title; that Kolburt did not acquire title on March 24, when the car was delivered, because the certificate of title did not then pass between the parties with an assignment thereof, as required by Section 301.210 RSMo 1949, V.A.M.S.; that Kolburt did not acquire title until the certificate was assigned (March 27); that by executing the chattel mortgage before he had title to the property Kolburt was giving a chattel mortgage on after-acquired property; that the property having been acquired after the mortgage was given there was nothing for the mortgage to operate upon and that it was void under the rule referred to in Personal Finance Co. of Missouri v. Lewis Inv. Co., Mo.App., 138 S.W.2d 655, and Bank of Kennett v. Clayton, 241 Mo.App. 487, 245 S.W.2d 678; that a chattel mortgage on after-acquired property is void as to third parties; that the chattel mortgage is the basis of plaintiff's claim and when the mortgage falls the claim falls.

World's claim is based upon a duly recorded chattel mortgage, executed prior to the purchase of the Cadillac by appellant Berin. The provisions of the mortgage were breached prior to the institution of this action. World, assignee,

was entitled to possession under the terms of the mortgage unless it was void as a mortgage on *after-acquired* property. A mortgage on after-acquired property is void as to third parties, unless the mortgagee takes actual possession before the rights of third parties accrue. Personal Finance Co. of Missouri v. Lewis Inv. Co., Mo.App., 138 S.W.2d 655. A mortgagor must have legal title for his mortgage to be a lien on property. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975. If at the time of delivery of an automobile no certificate of title passes to the purchaser with an assignment thereof legal title does not pass and the purchaser has no mortgagable interest. Pearl v. Interstate Securities Co., supra. The words "at the time," however, as used in § 301.210, supra, refer to the whole transaction or series of circumstances and do not literally mean "eo instanti." Saffran v. Rhode Island Ins. Co. of Providence, R. I., Mo.App., 141 S.W.2d 98. While a sale not in compliance with § 301.-210, supra, is void the purchaser nevertheless acquires an interest which ripens into legal title upon the occurrence of the assignment. Kusnetzky v. Security Ins. Co., 313 Mo. 143, 281 S.W. 47, 45 A.L.R. 189. A purchase money chattel mortgage, executed at the same time an automobile is sold, takes precedence of any other claim arising through the mortgagor. "At the same time," however, does not mean that the two acts (execution of mortgage and assignment of certificate of title) literally must be simultaneous. To require such exactitude would be to require an impossibility. Some period of intervening time necessarily must elapse between the two acts. The test is not whether the two instruments were executed at the same precise instant, or at the same sitting, or even on the same day. The true test is whether they were executed as integral acts in a series of acts which, taken together, constitute one continuous transaction, and were so intended, so that in order to carry out the intention of the parties the two instru-- ments should be given contemporaneous operation and effect.

11 C.J., Chattel Mortgages, § 39:

"If the acquisition of title and the execution of the mortgage are concurrent, this is sufficient title and ownership in the mortgagor to sustain the mortgage."

14 C.J.S. Chattel Mortgages § 26, p. 627:

"Where a mortgage is given simultaneously with the mortgagor's acquisition of the property, or in contemplation of the immediate acquisition of the property, it cannot be said to be a mortgage of after-acquired property, as, for example, where a purchase-money mortgage is given simultaneously with the taking of title and is a part of the same transaction."

Blashfield's Cyclopedia of Automobile Law and Practice, § 4683:

"When the sale of an automobile and execution of a mortgage to a finance company constitute one transaction, the mortgage is valid, though executed before the buyer executes the conditional sales contract and receives possession of the automobile."

And see Greenaway v. Fuller, 47 Mich. 557, 11 N.W. 384; Pietrantonio v. Scalo, 120 Conn. 524, 181 A. 628; Chattanooga State Bank of Chattanooga v. Citizens' State Bank, 39 Okl. 255, 134 P. 954; Arlington Mill & Elevator Co. v. Yates, 57 Neb. 286, 77 N.W. 677; State v. Winslow, 150 Kan. 475, 95 P.2d 277; Jones, Chattel Mortgages and Conditional Sales, § 104.

In Personal Finance Co. of Providence v. Henley-Kimball Co., 61 R.I. 402, 1 A.2d 121, 117 A.L.R. 1476, a chattel mortgage on an automobile was given prior to the time the mortgagor obtained possession or title, but " * * * at the time the mortgage was executed Grace, to the plaintiff's

knowledge, had an agreement in writing with Frank Crook, Inc., to purchase from it the specific automobile in question, and the loan was made and mortgage taken by the plaintiff to enable Grace to carry out his said agreement." 1 A.2d loc. cit. 123. This was held not invalid as a mortgage upon after-acquired property since the transactions "in accordance with the evident intent of the parties, constituted one single, continuous transaction." The court said that "The transactions were to all intents and purposes simultaneous."

In Bankers Investment Co. v. Meeker, 166 Kan. 209, 201 P.2d 117, in a similar situation, the Kansas Supreme Court said, 201 P.2d loc. cit. 119:

"Where a mortgage is given in contemplation of the immediate acquisition of property, it cannot be said to be a mortgage of after-acquired property but is a valid and subsisting mortgage as soon as the mortgagor obtains possession of and title to the property as contemplated by the transaction."

In Ethridge v. Allied Equipment & Supply Co., 26 N.J.Super. 586, 98 A.2d 590, the Appellate Division of the Superior Court of New Jersey said, loc. cit. 98 A.2d 591, that

" * * * where, as in this matter, there is no intention to evade the statute and the parties contemplate the prompt execution and delivery of the prescribed title papers, the transaction should not be considered as void merely because the papers were not delivered at the moment the bargain was struck or when the buyer took possession of the vehicle."

■ Do the facts bring the instant case within the "one transaction" rule, or is this a mortgage on after-acquired property? It is incontrovertible that the sale and conveyance of the Cadillac to the purchaser and the reconveyance of the Cadillac to the seller as security for the payment of the note given by the purchaser were both part

and parcel of one and the same continuous transaction. Both were united, blended in and witnessed by one single document. Both were executed and completed before the rights of any third parties arose. Both were intended to constitute one transaction. The sale was made in contemplation of the mortgage and the mortgage was given in contemplation of the loan, which made the sale possible. It was a purchase money mortgage. The seller-mortgagee was the lender and the purchaser-mortgagor was the borrower. Neither party intended either event (sale or mortgage) to occur without the other. They were interdependent, mutual and reciprocal. Each was indispensable to the other. The parties contemplated that it was all the same transaction. At the time the mortgage was given the parties contemplated the passage of title of the Cadillac to the purchaser forthwith, as soon as the mechanics of assignment could be attended to; the purchaser-mortgagor took possession of the Cadillac then, and may be said to have been in the act of acquiring title. There was no fraud, imposition or delay. Each party proceeded with diligence to do what he was bound to do. On the day the purchaser delivered the signed sales-mortgage document to the salesman he also delivered possession of the car he was trading in on the Cadillac and paid $50 in cash, as required by the contract. The seller's agent delivered the Cadillac to the purchaser. The certificate of title could not then pass between seller and buyer because the certificate was at the main offices of the seller, which were closed that day. Both parties intended to, and did, effect the transfer of title as soon as practicable under the circumstances. This was not a mortgage on after-acquired property in the accepted sense of the term. It was a mortgage on specific, identified property which the owner intended to transfer to the mortgagor, and which actually was transferred as soon as it could be accomplished. In legal effect the acquisition of the title by the purchaser and his execution of the mortgage were concurrent and contemporaneous. All that happened

during the period March 23–28 constituted one transaction.

Appellant relies heavily upon Personal Finance Co. of Missouri v. Lewis Inv. Co., supra, and Bank of Kennett v. Clayton, 241 Mo.App. 487, 245 S.W.2d 678. The first case did not involve a purchase money mortgage. The mortgagee-finance company was a third party. In such case, in order for the "one transaction" theory to apply, the facts must disclose that there was a valid, subsisting contract between the owner and the purchaser for the sale of the automobile; that the contract was known to the third party and that the third party made the loan to the purchaser in reliance upon and in contemplation of the consummation of the contract. In Personal there was no showing that there was a contract between the owner of the automobile and Harris, the purchaser. The seller, S and L Tire Company, was not the owner at the time of the "purchase" or at the time Harris executed the mortgage. "Harris purchased the sedan from the S and L Tire Company" but "The tire company did not own the car at the time." The true owner on October 15, when Harris gave Personal a mortgage on the vehicle, was not identified. The facts stated in the opinion do not show that the true owner had authorized S and L Tire Company to act as agent to negotiate the sale. The tire company did not get a certificate of title until October 19. Harris, who mortgaged the car on October 15, did not get a certificate of title from the tire company until October 25. Neither seller nor buyer had title at the time the mortgage was executed. When Harris received the certificate of title about October 25 the assignment form was in blank. There was no written assignment of the certificate at that time. While at the time of trial there was a purported assignment by "S and L Tire Company" (defective because not properly signed and not acknowledged) there was nothing to show when or by whom that assignment was made. The fact that the finance company's check was made out jointly to Harris and the tire company tends to show that the finance company loaned the money with knowledge that the tire company had some kind of an interest in the transaction, and that the loan was made to Harris in such a manner as not to be available to Harris without the consent and satisfaction of the tire company. Even so, it cannot be said that the facts show that the finance company knew of the existence of a contract of sale between the owner of the property and Harris, or that the loan was made in contemplation of the immediate acquisition of the property by Harris. Harris' contract (if any) was not with the true owner, but with the tire company, which had neither title nor (so far as appears) agency to sell. The "one transaction" doctrine does not include or encompass *two* transactions (from X to the tire company, and then from the tire company to Harris). In Personal the mortgage clearly was given on after-acquired property. The same is true of Bank of Kennett v. Clayton, supra, in which not only did the mortgagor not own the tractor in question when he mortgaged it to Richardson, but he had no contract with the owner for its purchase at that time. Negotiation for the purchase of the tractor had failed ten days previously. Neither case supports appellant's position under the instant facts.

Judgment was for the right party. The chattel mortgage became a valid and subsisting lien upon completion of the transaction, the last act of which was the assignment of the certificate of title to Kolburt. The recording of the mortgage and assignment of the mortgage gave notice to all the world, including appellant, of World's lien on the automobile. World was given the right to possession upon default by Kolburt, which occurred.

There is no occasion to rule upon the further points raised by appellant, which relate to the nature and validity of appellant's interest in the Cadillac. Whatever interest appellant acquired through the assignee of the original mortgagor, subse-

quent to the time World acquired its interest, was inferior to and subject to the lien of World.

 No further reason for affirmance need be given, but one exists, namely, that appellant is estopped to set up the defense that the sale to Kolburt was void and that Kolburt's mortgage was void, since appellant's only claim to the automobile is through Kolburt. Neither the mortgagor, nor anyone acquiring his title, is permitted to defeat the mortgagee's title, or the title of the assignee of the mortgagee, by setting up ownership in another. National Bond & Investment Co. v. Mound City Finance Co., Mo.App., 161 S.W.2d 664, and authorities cited.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.