255 S.W.2d 807 (1953)
BARNUM et al.
v.
HUTCHENS METAL PRODUCTS, Inc. et al.
No. 43092.
Supreme Court of Missouri, Division No. 1.
March 9, 1953.
Luther W. Adamson, Kansas City, Richard Farrington, Springfield, for appellants.
J. Weston Miller, John F. Carr and Miller & Fairman, Springfield, for respondents.
VAN OSDOL, Commissioner.
Action by real-estate brokers to recover $9984 commission for the sale and lease of property. Plaintiffs, Howard N. Barnum and Byron F. Jordan, are partners doing business under the firm name of Barnum-Jordan Company, Realtors, with offices in Kansas City; and defendants are Hutchens Metal Products, Inc., a Corporation, and C. Ted Hutchens and Bess Hutchens, principal stockholders and respectively president and secretary of defendant corporation.
Defendant corporation, in 1949, was the owner of a large manufacturing plant equipped with manufacturing machinery at Lamar in Barton County. Defendants were desirous of selling the plant, and, on June 21, 1950, a contract of sale of the realty and a contract of lease of the personalty were entered into, the purchaser and lessee being J. G. Doyle of Kansas City.
*808 Plaintiffs alleged "that they are and were the inducing and procuring cause of said sale and lease, and are thereby entitled to be paid and compensated for their services." Defendants by their answer raised the general issue. At the close of plaintiffs' evidence the trial court directed a verdict for defendants, and this appeal has been perfected by plaintiffs from the judgment entered dismissing plaintiffs' action.
Plaintiffs-appellants have stated in their brief that the sole question involved upon this appeal is whether plaintiffs' case should have been submitted to the jury.
It is the general rule that a realestate broker is entitled to recover his commission on the sale of real estate if he shows himself to have been the procuring cause of the sale although the owner himself had finally consummated the sale. Of course, the rule is equally applicable whether the owner consummates the sale personally or through another broker. The owner cannot escape liability to a broker who is the procuring cause of a sale by employing another broker to consummate the transaction; and whether or not a broker is the procuring cause is ordinarily a question for the jury. Bowman v. Rahmoeller, 331 Mo. 868, 55 S.W.2d 453; Bell v. Kaiser, 50 Mo. 150; Studt v. Leiweke, Mo.App. 100 S.W.2d 30; Grether v. Di Franco, Mo.App., 178 S.W.2d 469; Earls v. Alsup, 237 Mo.App. 819, 176 S.W. 2d 830. However, upon this appeal, in our approach of the examination of the question of the submissibility of plaintiffs' case, defendants-respondents remind us of a principle stated by this and other courts that a party, having the burden of proof on an essential issue, is bound by the uncontradicted, though adverse, testimony of his own witnesses on the issue unless there are facts from which the jury may draw a contrary inference. Hoock v. S. S. Kresge Co., Mo.App., 222 S.W.2d 568, Id., Mo.Sup., 230 S.W.2d 758; Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W.2d 835; Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663.
As stated, defendants were desirous of selling their manufacturing plant and machinery contained therein. In the fall of 1949, defendants mailed copies of a circular, describing their plant and equipment, to plaintiffs and to other real-estate brokers in Kansas City and elsewhere, including the real-estate firm of E. A. Mabes and Company of Kansas City. Plaintiff Byron F. Jordan testified that "a little previous" to the 6th or 7th of March 1950 he had been in contact with one J. G. Doyle of Kansas City concerning Doyle's need for additional building space for the manufacturing business of R. P. M. Manufacturing Company of which Doyle was an officer, and witness showed Doyle three or four buildings in Kansas City which did not meet Doyle's requirements. Witness then took Doyle to North Kansas City in search of vacant ground on which to construct a new building, at which time Doyle remarked to plaintiff Jordan, "Well, maybe, we may have to move out of town, we might be better off if we would consider to move to some small town adjacent to Kansas City." At the time plaintiff Jordan recalled the circular he had received from defendants and told Doyle about it. Plaintiff Jordan "did not remember the (defendants') name on that particular date," but Doyle asked plaintiff Jordan if he could make a contact "down there (Lamar) and see if it (defendants' property) is still available." The witness, plaintiff Jordan, called his friend Thorpe at Lamar who ascertained that defendants' property was still for sale, and, in a subsequent exchange of letters between plaintiffs and defendants, Jordan was advised (on March 7th) that the plant was for sale or lease, and defendants were in turn advised (on March 8th) that the prospective purchaser which plaintiffs had in mind was R. P. M. Manufacturing Company of Kansas City (of which Doyle was an officer, as stated); and additional information was requested by plaintiffs of defendants as to price and terms (on March 8th), which information was given by defendants' letter of March 9th, in which letter a circular containing "pertinent facts" concerning the Lamar plant was also enclosed. March 10th, *809 plaintiff Jordan wrote defendants as follows,
"Thank you for your letter of March 9th and in connection therewith wish to advise that Mr. Doyle, the owner of the R. P. M. Manufacturing Company, is in Chicago for a week or so but I shall contact him immediately upon his return and advise you of his interest."
Plaintiffs had no further communication with and made no further inquiry of defendants after the letter of March 10th until sometime subsequent to the sale and lease in June.
Plaintiff Jordan also testified that he had conveyed the information contained in the circular (enclosed in defendants' letter of March 9th) to Doyle by telephone. Doyle told plaintiff Jordan that he would discuss the Lamar property with his fellow officers (of the R. P. M. Manufacturing Company) and asked Jordan to telephone him in a few days. However, on April 1, 1950, Doyle told Jordan that Doyle's fellow officers felt there would be difficulty in getting the families of "key personnel" at the Kansas City plants to make the change to Lamar, and the matter should be dropped for the time being; but, if there were a change made, he (Doyle) would "contact" plaintiff Jordan. On Sunday, June 18th, plaintiff Jordan learned the plant at Lamar had been sold to Doyle. A few days later plaintiff Barnum went to Lamar and demanded of defendants a commission on the sale (and lease) and, upon' defendants' refusal, plaintiffs instituted this action.
Plaintiffs further introduced into evidence the deposition of E. A. Mabes of E. A. Mabes and Company, who testified that he had learned the Lamar property was for sale as early as September 1949, "approximately"; that he, having occasion to make a business trip to the vicinity of Lamar, stopped and inspected the property. This was some time in October 1949. He had received a copy of the circular describing the Lamar plant, and mentioned the property to Doyle in November, but "aroused no interest"; he mentioned the property to Doyle in the months of February, April and May (1950) "until the time we made the deal." Until late April or early May, Doyle had not wanted to leave Kansas City "on account of his personnel." Mabes further testified that the first time he had interested Doyle and convinced him he should look at the Hutchens property was some time in the last of April or in May when he (Doyle) "definitely told me he could not find anything (in Kansas City) and he had to movetime was of the essence at that time." Mabes prevailed on Doyle, "at least, to let us take him down there (Lamar)." This conversation occurred at Doyle's office. Until that day Doyle had "refused to go out of town." An automobile trip was arranged, but Doyle went to Lamar by airplane. Upon his return, Doyle wanted his manager to see the plant. Doyle said he was interested, if certain structural changes could be made in the building to meet his requirements. He asked that his wife, and his auditor and manager, be taken to meet him at the Lamar plant. These persons were taken by automobile to Lamar by the son of Mabes, and they were there met by Doyle who had gone to Lamar by plane. At that time direct negotiations, between Doyle and defendants, were commenced culminating in the contracts of sale and lease of June 21st. Mabes made four trips to Lamar, including that of October 1949. In addition "to his contacts" with Doyle, he had been in communication with defendants by phone "about ten times." The "deal," execution of the contracts of sale and lease on June 21st, followed the meeting of the minds some time in May or early June. Defendants paid Mabes a commission.
Here there is no material conflict in the testimony of plaintiff Jordan and plaintiffs' witness, E. A. Mabes, as the testimony bears upon the issue essential to plaintiffs' recovery. Plaintiffs by introducing the testimony of the witness Mabes vouched for his credibility; and his testimony upon the essential issue of "procuring cause," not being contradicted by any other witness, may be considered as true.
*810 This case is not one wherein there was an exclusive listing. Plaintiffs and Mabes (and others) were authorized by defendants to endeavor to sell the property. The facts of our case are somewhat like those of Dore v. Jones, 70 Wash. 157, 126 P. 413.
In that case plaintiff Dore, a real-estate broker, instituted an action against defendants Jones and Mollendorf, owners, to recover a commission for the sale of their property. Plaintiff Dore introduced defendant Mollendorf to a prospective purchaser who was favorably inclined toward the property and promised to look at it that day. Meanwhile, Wilson, another broker with whom the property was also listed, showed the property to the prospective purchaser, brought such purchaser to the owners, defendants, and effected a contract of sale. On these facts a jury found for plaintiff. Upon appeal from the judgment for plaintiff the Supreme Court of Washington reversed, and ordered the dismissal of plaintiff's action. Said the reviewing Court, 126 P. at page 413, "The plaintiff first introduced the prospective purchaser to defendants, but he did nothing more. It was conclusively shown that Mr. Wilson, of the firm of Grinnell & Co., was the efficient cause of the sale, and there is no claim, or at least no evidence, that the defendants acted in bad faith with the plaintiff. The mere fact that the plaintiff first introduced the purchaser to the defendants is not a compliance with the contract to sell, where it is shown that the sale is made and closed by another agent, with whom the property is also listed."
In our opinion, plaintiffs' own evidence shows that the efforts of E. A. Mabes brought about the sale and lease. There was no factual basis for the belief that, prior to the time Mabes insisted that Doyle visit Lamar to look at the Hutchens property, Doyle had really become interested in purchasing the property. See and contrast McCormack v. Henderson, 100 Mo.App. 647, 75 S.W. 171, cited by plaintiffs-appellants. And an inference that defendants in any way acted in collusion with Mabes and Doyle to deprive plaintiffs of a commission is not justified. Doyle did give Mabes the names of various property owners who might sell their properties and invited Mabes to interview such owners to ascertain if their properties were for sale. However, accepting, as we do, the testimony of Mabes as true, he had been, since November 1949, attempting to arouse Doyle's interest in the property at Lamar. But, assuming that Doyle preferred Mabes to plaintiffs, yet there is no basis of fact in the record that defendants were acting in bad faith toward plaintiffs. Mabes testified, as stated, that he had endeavored to interest Doyle since November 1949; and, although plaintiffs communicated with defendants and had given defendants the name of Doyle as a prospective purchaser in plaintiffs' letters of March 8th and 10th, yet it is clear that, after March 10th, so far as defendants knew, plaintiffs did not further pursue their efforts in inducing a meeting of defendants and Doyle or otherwise act with the view of promoting negotiations for the sale or lease of defendants' property. In this connection plaintiff Jordan testified, "I had submitted all the information to Doyle, and I submitted Doyle's name as a prospect to Mr. Hutchens.I feel that that is enough." On the other hand, Mabes urged Doyle to visit Lamar, and, after Doyle's visit, brought Doyle and defendants into personal negotiation's resulting in the sale and lease. Mabes, not plaintiffs, continued in his efforts to induce and did induce Doyle to become interested in purchasing the Lamar property; Mabes brought the parties together; and, in the subsequent negotiation (Mabes, at times, participating), the parties arrived at a meeting of minds, culminating in the contracts of sale and lease.
It seems to us plaintiffs' whole evidence, in which there was no conflict on the issue of procuring cause, not only did not tend to prove plaintiffs' efforts were the procuring cause of the transaction, but, on the contrary, conclusively proved that Mabes' efforts were the procuring cause.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
*811 PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.