STATE of Missouri, Respondent,

v.

Jesse Glenn FRALEY, Appellant.

No. 49408.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Albert Felderbaum, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Dale Reesman, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

**LEEDY, Judge.**

Jesse Glenn Fraley appeals from a conviction for obtaining money with the intent to cheat and defraud by means of a bogus check, in violation of § 561.450.[1] At a hearing held out of the presence of the jury prior to the submission of the case, the trial judge determined (and entered a finding so declaring) that, as alleged in the information, defendant had been previously convicted, sentenced to five years' imprisonment, and incarcerated in the Missouri Penitentiary for the felony of robbery in the first degree by means of a dangerous and deadly weapon (§ 556.280), and upon the coming in of the verdict, the trial judge, as further authorized by subd. 2 of said section, assessed the punishment which he fixed at the maximum prescribed for a violation of § 561.450, that is, imprisonment for a term of seven years. Judgment and sentence went accordingly, and this appeal followed.

Defendant was represented by court-appointed counsel who filed a timely motion for a new trial. There is no brief on behalf of defendant as appellant, in the absence of which we consider such of the assignments of the motion for a new trial as are sufficient to comply with the requirements of Rule 27.20(a), V.A.M.R., respecting detail and particularity of statement of the grounds or causes therefor. Among the assignments of the motion is one complaining of the failure of the court to direct a verdict of acquittal at the close of the entire case "for the reason that the state failed to prove a cause of action against defendant as alleged in the indictment or information." It is not certain what is meant by this reference to the "indictment" (which had been supplanted by an information filed by leave in lieu of it) nor by the use of the term "cause of action" (as applied to a criminal case). We conclude these expressions were used inadvertently, and that if the assignment is meant as a challenge of the sufficiency of

1. All references to statutes are to RSMo 1959 and V.A.M.S., unless otherwise noted.

the evidence to support the verdict (and we so construe it, rather than as attempting to allege, for example, that there was a variance between the charge and the proof), it must be disallowed, as the résumé of the relevant facts set out below will demonstrate.

The check in question, bearing date of "Jan. 6, 1961," was drawn on "American National Bank in St. Louis, Mo.," payable to the order of Harold E. Jordan for the sum of Eighty-seven & 82/100 Dollars ($87.82), and purported to have been drawn by "Shaw Marble & Tile Company" (4179 Meramec Street), and immediately below what we take to have been the printed name of said company appear the signatures of "J. P. Thorpe" as "Ass't Sec'y," and "Frank Beyler" as "Manager."

Ronald Bernard Alfaro testified that on the date in question, Jan. 10, 1961, he was employed as a teller by Southern Commercial Bank in the City of St. Louis; that in the late afternoon of that day a car pulled up to a drive-in window of the bank at which he was on duty, and one of the two men in the car (positively identified by him at the trial as being the defendant) presented the check (State's Exhibit "1") and asked the witness if he would cash it. Knowing that there was an account in the bank in the name of Harold E. Jordan, witness inquired if he (defendant) had an account with the bank, to which inquiry defendant answered in the affirmative. The witness then furnished defendant a pencil with which the latter then and there endorsed the check in the name of Harold E. Jordan, the payee and the witness gave defendant the full amount of the check, $87.82. Witness noted on the check the license number of the car, and it was by this means a few days later, when the check was returned unpaid, that defendant was traced and apprehended.

Albert H. Coerver, Vice President and General Manager of Shaw Marble & Tile Company, testified that the check had been made out on one of the company's regular, printed blank forms, and bore the number "3899A." There was no showing with respect to how or when it got out of the company's possession nor when it was discovered to be missing, except inferentially from the fact that on Jan. 11, 1961 the company directed the bank to stop payment on it. This witness further testified that the company had no employe by the name of Harold E. Jordan, nor did it do business with anyone of that name; that the company did not issue the check, and had no one by the name of either Beyler or Thorpe, nor did either the witness or the company authorize anyone to sign these names on the check.

Orville Ohl, a Vice President of American National Bank, testified that Shaw Marble & Tile Company had had an account with the bank for thirty-eight years, and that State's Exhibit "1" was on one of that company's blanks; that he was familiar with the authorized signatures on the Shaw Company's account, and that those on the check in question were not "Shaw Marble signatures"; that when the check was received at the bank it was returned not only because payment had been stopped, but also because the "signatures didn't agree."

As stated, the license number of the car (a '57 Chevrolet station wagon) was jotted down on the check by the teller as the car drove away from the drive-in window. By this means ownership of the car was traced to a Mrs. Ola Drake, who, when called as a state's witness, testified that although she owned the car, she did not have it in her possession on the date in question, January 10, 1961. In this connection, two members of the St. Louis Police Department testified that they saw defendant in the jail at Hillsboro in January, 1961, and that he there stated he had had possession of Mrs. Drake's station wagon; one, Detective Sanders, said defendant admitted having the car "about four days, January 7, 8, 9, 10, and 1 think 11th, five days," and the other (Detective Corporal Murphy) quoted defendant as saying that he had it in his possession "between the 7th and 10th." He

denied, however, knowing anything about the check.

Defendant did not testify, but his mother and father were called as the sole witnesses in his behalf, and they testified to facts which, if believed, would have exonerated defendant on the premise that the teller's identification of him was entirely erroneous.

The teller paid out $87.82 of the bank's money to defendant on what, by any definition, was a bogus check, and no part of said sum was ever recovered. An intent to cheat and defraud the bank was inplicit in the very nature of the transaction as we have stated it. The question of defendant's guilt was clearly one for the jury, and the court did not err in refusing to direct a verdict of acquittal.

Complaint is made of the action of the court in permitting the state (immediately following the ruling on defendant's aforesaid motion for a directed verdict of acquittal, and before any evidence had been introduced on behalf of defendant) to "reopen its case for the purpose of introducing State's Exhibit No. 1, the check, into evidence, and giving the jury an opportunity to examine it." Upon such request being made, the following occurred:

"THE COURT: All right, I will permit you to reopen for that purpose. I think the check is in evidence.

"MR. FELBERBAUM: Defendant objects to it.

"THE COURT: All right, the objection will be overruled."

It will be noted, first, that that which purports to be an objection did not come until belatedly, and after the court had already ruled the state's request; and, secondly, that no ground or reason was given in support of the so-called objection either at that time, or in the motion for a new trial. Obviously, this assignment presents nothing for review.

There is no substance in the complaint that two witnesses were permitted "to testify for the state, although their names were not endorsed on the information, to-wit, the vice-president of the American National Bank and Cpl. John Murphy." As to the witness Murphy, the record shows that the information bore the endorsement of his name at the very time it was filed. As to "the vice-president of the American National Bank" (and not designated by name in the motion for new trial), the record shows that five days before the trial, the circuit attorney, by leave of court, formally "endorses the following named persons [among others] as witnesses on the part of the State: * * * Cashier, American National Bank, 6637 S. Kingshighway," with due notice thereof to defendant's attorney. Endorsement of a witness only by the title of the office he holds in an organization, and not by name, is irregular and out of the norm, but inasmuch as defendant had not complained of the omission nor sought to secure identification of the proposed witness by name, and inasmuch as the representative of the bank who did testify (Mr. Ohl) was an officer of the bank who occupied another position (vice president) and not that of cashier, but one who would likely be expected to have as much knowledge of the facts as a fellow officer, we see no abuse of discretion in permitting him to testify.

We have very carefully searched the record of the closing argument of the assistant circuit attorney and fail to find therein either the language attributed to him (or anything approaching it) or the offending failure of the trial court to reprimand or declare a mistrial therefor, as alleged in paragraph 11 of the motion for new trial, viz:

"11. The Court erred by permitting the Circuit Attorney to commend on the defendant's failure to testify, in his closing argument, i. e., 'There's only one man in this Court room who knows' —then pointing to the defendant, without reprimanding the Circuit Attorney,

or declaring a mistrial, the Court knowing that defendant could not answer this accusation."

Such assignment not only does not prove itself, but it is directly contrary to the record of what transpired.

■ Similarly, there is absolutely nothing in the record to sustain the defendant's belief, as alleged in ground 12, that the proceedings at the trial were not accurately reported.

Those matters which the rules require us to examine whether error thereon is assigned or not have been examined, and we find no reversible error therein. Judgment affirmed.

All of the Judges concur.