STATE of Missouri, Respondent,

v.

Harvey F. EUGE, Appellant.

No. 51030.

Supreme Court of Missouri, Division No. 1.

March 14, 1966.

**120**

No brief filed for appellant.

Norman H. Anderson, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Defendant, Harvey F. Euge, was convicted of obtaining money with intent to cheat and defraud by means of a bogus check under § 561.450 RSMo 1959, V.A. M.S., by a jury in the Circuit Court of the City of St. Louis, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of two years. Following rendition of judgment and imposition of sentence in accordance with the verdict, an appeal was perfected to this Court.

The defendant has filed no brief in this Court. The case is before us on the transcript of the record and the brief of the respondent. Therefore, we consider such of the assignments of the motion for a new trial as are sufficient to comply with the requirements of Rule 27.20(a), V.A. M.R. State v. Fraley, Mo.Sup., 369 S.W. 2d 195.

Defendant assigns as error the overruling of his motions for directed verdict wherein he alleged that under the evidence he is not guilty of the offense charged against him because the check in issue was merely a check returned for insufficient funds. This assignment of error is sufficient to dispose of this case on appeal.

Section 561.450 RSMo 1959, V.A.M.S., under which defendant was prosecuted, provides that: "Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever * * * by means or by use, of any false or bogus check or by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds * * * shall be deemed guilty of a felony * * *."

The charging portion of the indictment reads as follows:

"THE GRAND JURORS OF THE STATE OF MISSOURI, within and for the body of the City of St. Louis, now here in Court, duly impaneled, sworn and charged, upon their oath present, That HARVEY F. EUGE between October 17th, and the 22nd day of October, one thousand nine hundred and sixty-three, at the City of St. Louis aforesaid, unlawfully, feloniously, designedly, fraudulently, with intent to cheat BANK OF ST. LOUIS, INCORPORATED, a Corporation, in the care and custody of HAROLD RATHMAN, by means and by use of a certain check purportedly drawn by one DAYTON MITCHELL HORN on an account in the MANCHESTER BANK of ST. LOUIS, a Corporation, and dated October 17th, 1963 and that HARVEY F. EUGE did present and tender the aforesaid check to HAROLD RATHMAN and the said HAROLD

RATHMAN relying on the purported genuineness of the said check and being induced and deceived thereby did then and there give to the said HARVEY F. EUGE the sum of forty-five dollars, lawful money of the United States; the money and property of the said BANK OF ST. LOUIS, INCORPORATED, a corporation; and the said HARVEY F. EUGE at the time unlawfully, feloniously, and with intent to cheat and defraud did obtain the aforesaid money and property from BANK of ST. LOUIS INCORPORATED, a corporation, and the defendant knew at the time he tendered the said check that the name of DAYTON MITCHELL HORN was in fact the name of a fictitious person and that the aforesaid check was bogus; contrary to Section 561.450, Missouri Revised Statutes, in such case made and provided, and against the peace and dignity of the State."

The State's evidence justifies the following statement: On September 19, 1963, defendant *Harvey F. Euge* went to the Manchester Bank of St. Louis, deposited $40 cash in a checking account under the name *Dayton Mitchell Horn* and ordered checks printed. Mrs. Daisy Hayes, an employee of the Manchester Bank, identified defendant at the trial as the man who opened the *Horn* account. Defendant had an account at the Bank of St. Louis from December 31, 1959, until January 28, 1963, when it was closed by the bank. This account was in the name of *Harvey F. Euge*. On October 17 or 18, 1963 (there is a conflict in the evidence as to the correct date), defendant went to a teller's window at the Bank of St. Louis and re-opened his account in the name *Harvey F. Euge*. He deposited a check in the amount of $45 on the Manchester Bank of St. Louis, drawn to cash, signed by *Dayton Mitchell Horn*, and endorsed on the back by *Harvey Euge*. He received a deposit slip in return showing a $45 deposit in the *Harvey F. Euge* account. Immediately thereafter he wrote a check in the amount of $45 on the *Harvey F. Euge* account in the Bank of St.

Louis, presented it to the teller at the Bank of St. Louis, and was given $45 cash. The Bank of St. Louis processed the *Horn* check and it was returned by the Manchester Bank, marked "insufficient funds."

The question is whether the proof supports a charge under § 561.450 RSMo 1959, V.A.M.S.

In construing § 561.450 RSMo 1959, V.A.M.S., we have pointed out in State v. Bird, Mo.Sup., 242 S.W.2d 576, 577, and State v. Robinson, Mo.Sup., 255 S.W.2d 811, 814, " * * * that the legislature has distinguished between a genuine check drawn on a bank in which the drawer *knows he has no funds* and a *false or bogus check,* i. e., one drawn on a non-existent bank, or by or payable to a fictitious person. * * "

In State v. Scott, Mo.Sup., 230 S.W.2d 764, 767, we held, " * * * the State must prove the particular method to cheat and defraud which is prohibited by statute and which is charged in the information." The indictment in the instant case does not charge defendant with obtaining money by means of a check drawn by him on a bank in which he *knew he had no funds.* The record affirmatively shows that funds were in the *Horn* account at the Manchester Bank when the *Horn* check was presented to it.

It was returned marked "insufficient funds."

Therefore, the question narrows to whether the proof supports a charge that defendant obtained money with intent to cheat and defraud by means of a bogus check.

In State v. Todd, Mo.Sup., 372 S.W.2d 133, at 136, we stated: " * * * A bogus check is one drawn on a non-existent bank, or by or payable to a fictitious person. State v. Robinson, Mo., 255 S.W.2d 811, 814[2]; State v. Bird, Mo., 242 S.W.2d 576, 577[2]. All of the evidence tended to prove that the drawers of the checks were fictitious persons. Therefore, the pretended accounts were non-existent. Cheating and defraud-

ing 'by means or by use, of any false or bogus check' is speci cally proscribed by § 561.450. * * *"

In State v. Todd, supra, payment of nine checks deposited was refused by the banks on which they were drawn and the evidence showed those banks did not have any accounts in the names of the purported makers. In State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, defendant obtained money by endorsing, and receiving cash for, a payroll check, allegedly drawn by a shoe company, which was not a check of the shoe company and which was drawn to a person not employed by the company, and by a person not authorized to draw checks in behalf of the company. There was substantial evidence that the bank had no account out of which the check could be paid. The payee was held to be a fictitious person and the evidence was held sufficient to sustain a conviction. In State v. Polakoff, 361 Mo. 929, 237 S.W.2d 173, the defendant, Abe Elmer Polakoff, signed a check using the name Mrs. Blanch Watson, but the evidence was that there was no money in the bank belonging to him in his name or in the name of Blanch Watson. In State v. Fraley, supra, defendant obtained money by endorsing, and receiving cash for, a check which named as payee a fictitious person not an employee of the company and signed by fictitious persons not authorized to sign checks for the company. The checks in all of these cases were clearly bogus checks.

These cases do not assist us in determining the issue in the instant case. Here, the alleged bogus check was written by defendant *Euge* under the assumed name of *Horn* on the *Horn* account in the Manchester Bank and there was money, though insufficient, in said account. The check was drawn by a fictitious person. *Horn* was fictitious. Was the check drawn by a fictitious person under the rule set forth in State v. Todd, supra, and therefore violative of § 561.450 RSMo 1959, V.A.M.S.? We think not.

■■ Section 417.200 RSMo 1959, V.A. M.S., provides that it shall be unlawful to transact business under a fictitious name without first registering said name with the Secretary of State, and § 417.230 RSMo 1959, V.A.M.S., makes failure to register a misdemeanor. However, a person may assume a different name from his true one and may make contracts under his fictitious name. Sims v. Missouri State Life Ins. Co., 223 Mo.App. 1150, 23 S.W.2d 1075, 1078; 65 C.J.S. Names § 9, pp. 9–11. In his dealings with the Manchester Bank, defendant assumed the name *Horn.* He entered into a contract with the bank that, in return for his cash deposit, the bank would, when demanded, pay funds from the *Horn* account in such sums and to such persons as the depositor should direct. 7 Am.Jur., Banks, § 503, p. 358. This contract with the bank was not unlawful, nor did it contemplate the performance of an unlawful act. Defendant deposited cash in the *Horn* account. If he contemplated drawing money out of the account by signing the *Horn* name, he contemplated obtaining money which was his property. Under these circumstances, defendant may have violated § 417.230, supra, a misdemeanor. However, his contract with the Manchester Bank was not void. Bassen v. Monckton, 308 Mo. 641, 274 S.W. 404; Kusnetzky v. Security Ins. Co., 313 Mo. 143, 281 S.W. 47, 45 A.L.R. 189. Had the Manchester Bank honored the check, defendant would have had no recourse against the bank.

In State v. Tomlinson, Mo.Sup., 364 S.W. 2d 529, defendant Tomlinson was charged with attempting to obtain money by means of a false check on the Bank of St. Ann given to National Food Store, to which check he signed the name of his brother-in-law, Larry D. Rohmann. Defendant had authority to sign Rohmann's name to checks. Rohmann had an account at the bank some months prior to the day the check was written. The Court concluded that Rohmann and the defendant may have conspired to cheat and defraud the National Food Store but that, to convict the

defendant, it must have been shown that the defendant knew when he signed the check that there were no funds in the bank.

In the case before us, defendant opened an account under the name *Dayton Mitchell Horn* by depositing $40 cash in the Manchester Bank. He subsequently drew a check in the amount of $45 on said account and signed it with the name *Dayton Mitchell Horn.* Defendant had authority to sign the name *Dayton Mitchell Horn* to the check. There was an account at the bank the day the check was written. Defendant could not have known when he signed the check that there were no funds in the *Horn* account because the evidence shows there were funds in the account. The check was returned marked "insufficient funds." Under this evidence, we do not consider the check a bogus check under § 561.450 RSMo 1959, V.A.M.S. The determining factor is that there were funds, though insufficient, in the *Dayton Mitchell Horn* account when the check was written. It is possible that defendant could have been charged under § 561.460 RSMo 1959, V.A.M.S., for drawing an insufficient funds check. However, he was not charged thereunder and we do not rule the question here.

We consider this case to represent an exception to the rule announced in State v. Todd, supra, and cases cited therein, to the effect that a bogus check is one drawn on a non-existent bank, or by or payable to a fictitious person. Here, though the check was drawn by a fictitious person (defendant by use of the assumed name *Horn*), the check was not a bogus check because there was a *Horn* account in the Manchester Bank and money in the account when the check was drawn on the account. The check was drawn by a fictitious person but on an existing account. These facts distinguish the instant case from the Todd case where there was no evidence of existent accounts in the names of fictitious persons.

We hold the State's evidence was insufficient to prove defendant guilty of obtaining money by use of a bogus check. The trial court should have directed an acquittal. The judgment is reversed and defendant discharged.

All concur.