Lowell WRIGHT, Plaintiff-Appellant,

v.

Sondra K. JAEGERIS et al., Defendant,

v.

Betty BAILEY d/b/a Bailey Realty Company, Third-Party Defendant-Respondent.

No. 24898.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

Robert B. Paden, Maysville, for appellant.

Bob F. Griffin, Griffin, & Griffin, Cameron, for respondent.

MORGAN, Judge.

This case involves a contest between two real estate brokers, Lowell Wright and Betty Bailey, wherein each sought to establish that he or she was entitled to a commission of $1,500.00 for the sale of 130 acres of land for $30,000.00 in Clinton County, Missouri. The sellers, although originally named as defendants, had never denied owing a commission and were discharged, by stipulation, when they deposited the $1,500.00 with the court. The trial to a jury proceeded on the assumption the efforts of at least one of the brokers had to have been the "procuring cause of the sale" to Mr. and Mrs. Glenn Colhour. Judgment

was entered on the jury verdict for Bailey and Wright has appealed.

The original owner had died leaving two daughters as his heirs. They employed the law firm of Frost and Speckman in Plattsburg to probate the estate and act as their agent to sell the land. In this capacity, Mr. Speckman gave an open listing to several brokers including both claimants. After an original effort to sell for $37,000.00, it is agreed that a definite offer to sell for $30,000.00 with a promise to pay a 5% commission was conveyed to all of interest here.

All of the events of relevant interest transpired between December 23, 1965, and February 25, 1966. Mr. Speckman, as a witness, explained his status as attorney and agent for the sellers, and testified: That no broker was given an exclusive listing; that shortly before Christmas in 1965, Mrs. Bailey came to his office to obtain a key to the residence on the land sold; that later she called that she had a "hot prospect" (the ultimate purchasers) and the key didn't work; that he advised her " * * * if he's that hot its worth breaking a window out * * * to get in to show it to them"; that Mr. Wright called him on December 31 and related that he had a purchaser who was ready to sign a contract and he reluctantly scheduled a meeting in his office for New Year's Day; that Mr. Wright brought the purchaser to his office accompanied by his father-in-law, who was to provide the money for the purchase; that after some effort to lower the price, he prepared a contract of sale which was signed and a deposit of $3,000.00 was made; the contract was mailed to the owners and the signed copy was returned on January 10; he advised Mrs. Bailey on December 31 that the farm had been sold, but for the first time, while in his office on January 3, she discovered the purchasers were, in fact, her "hot prospect"; that on the closing date, February 25, the sale was completed and a note and deed of trust in favor of the father-in-law were prepared; those present for the closing included Mr. Wright, and Mrs. Bailey had made her presence known some-

where in his offices; and, he concluded his testimony with, "We owe the one commission and we want the jury to decide for us who to pay it to."

Mrs. Bailey's husband had other employment but assisted his wife in her real estate work. He was a graduate of the University of Missouri with a major in agriculture and was a licensed real estate salesman. Both testified, but to avoid needless repetition, their joint efforts will be related chronologically. After the listing he had gone over the farm and had shown it several times and had done some advertising. Both were busy with other clients when the purchasers first came to their office on December 23 and they told them of this farm and drew a map that the purchasers might look by themselves. Later that day when they returned, both Mrs. Bailey and her husband went with them to again see the property. They confirmed that the residence key did not work, but some effort was made to look into the house. The husband showed the barns and a shed and they drove along the road to see the entire farm which was relatively level and had a road on two sides. They pointed out a well on the back side and generally tried to show it to be a "good buy" for $30,000.00. An appointment was made for the next day, December 24, at 9:30 or 10 A.M. that the inside of the residence could be examined if the weather wasn't too bad. On December 24, Mrs. Bailey left to visit relatives at 10 A.M. but her husband waited until 11 o'clock and left because he thought the weather too bad for the purchasers to come. Apparently purchasers did arrive for the appointment later that day. Baileys refrained from contacting purchasers on Christmas Day or the day following because it was Sunday; however, on Monday, December 27, the husband called purchasers and was told they would not do anything until after the first of the year. Mrs. Bailey testified that he had relayed this phone conversation by reporting they weren't interested. On December 31, Mr. Speckman called to tell them the farm was sold but evidently the name of the pur-

chaser was not mentioned. Mrs. Bailey first learned on January 3 in Mr. Speckman's office that her "hot prospect" was the purchaser. She immediately declared her claim to the commission and apparently in the capacity of such a claimant made her presence known at the time of closing on February 25.

Mr. Wright testified he was a farmer and real estate broker living at Amity, Missouri, and that he had known the purchaser all of his life. After receiving the listing, he had advertised the farm was for sale and had shown it two or three times. He had shown the purchaser other farms during the summer of 1965. The purchaser called him and on December 31 he took them to this farm. (Purchaser testified this trip was made on December 26.) As they drove in the purchaser commented " * * * well, I've been here before." He didn't recall if Mrs. Bailey had been mentioned but at that time he didn't know her. They looked at the house by going through a window which he opened with his pocket knife. He told the purchaser the kind of dirt it was. It seems that later that day the purchaser and his father-in-law checked the place again. On January 1, in Mr. Speckman's office, he answered inquiries of the father-in-law, and in addition to trying to get it a "little cheaper" had discussed the status of cattle then on the farm and when possession would be available. The contract was prepared and he took it to the town of Cosby to obtain the signature of purchaser's wife. He, too, related the events of the closing date.

Mr. Colhour, one · of the purchasers, confirmed that he had contacted the Baileys on December 23, and that they showed him the farm after he had returned from his first trip there; that the Baileys had pointed out the advantages of the farm, and when asked, " * * * you were interested in the farm right then were you not?", answered, "Yeah"; that they failed to keep the appointment of December 24 and his comment was "Yeah, we had an appointment to meet the next day"; that he and his father-in-law went to the farm again on December 24; that he looked again on Sunday, December 26, with Mr. Wright, whom he had known all of his life; that Wright had shown him places during the summer of 1965; that Mr. Bailey did call on Monday, December 27, and, "I think I told him we wasn't interested in the place"; that Wright had indicated to him that he could get it cheaper because of his acquaintance with Mr. Speckman; that he looked again with Wright and then scheduled the meeting of January 1. He responded, "I would say yes" to the inquiry, " * * * were you intending to sign a contract at the meeting of January 1?"; that Mr. Wright had told him that whoever got the contract on it would be entitled to a commission.

 Although this case was not initiated by the sellers, upon their deposit of $1,500.00 into the registry of the court, the two brokers were in the same position they would have been in a true interpleader action. Each had the burden of showing that his or her efforts induced the purchasers to buy and were, in fact, the procuring cause of the sale. Holman v. Fincher, Mo.App., 403 S.W.2d 245. All of the evidence offered by either party to sustain this burden has been set out. Although the controverted facts are minimal in number, those few in dispute appear to have been too material for the court to have declared that a question of law was created, and the ultimate issue, i. e., which broker was the procuring cause of the sale, was properly submitted to the jury. LeCompte v. Sanders, Mo.App., 229 S.W.2d 298, 302.

Wright first contends that each instruction given by Bailey, Nos. 3, 4 and 6, were improper. No. 3 was a verdict directing instruction requiring a finding for Bailey if (1) she was a licensed broker, (2) that the commission was to be 5% of the sale price, and (3) her "efforts were the efficient and procuring cause of the sale of the farm to the purchaser." It is argued that point (2) should have provided the commission was due only if a ready, able and willing purchaser had been found. This was not neces-

sary as it was agreed the commission was to be paid and the jury knew that a qualified purchaser had been found. Point (3) requiring a finding that Bailey was the "procuring cause of the sale," properly submitted the only issue. The other findings were unnecessary under the circumstances of this case. Wright further complains that his verdict directing instruction, No. 2, required more specific findings than No. 3 for Bailey, and that this placed an additional burden on him. After first noting that it was prepared and offered at his request, we find it required a finding: (1) Wright had the listing, (2) 5% commission would be paid, (3) Wright found purchasers, (4) Wright was procuring cause of sale, and (5) Colhour did purchase. Again, the submission of any issue except number (4) was unnecessary. To have presented both claims in identical terms would have contributed to a more precisely accurate submission but the record neither reveals a request for the court to do so, nor that the jury could have been misled in any degree by this variance of surplusage. Each instruction properly required a finding on the issue of "procuring cause."

■ Instruction No. 4 provided: "You are informed that in order for broker, Mrs. Bailey, to recover in this case, it is only necessary that her efforts were the efficient and procuring cause of the sale of the farm. It was not necessary for her to have conducted the sale; this may be done by others without her aid or presence." Then followed a definition of procuring cause which was the same as that given by Wright in his Instruction No. 7. Wright's case had emphasized that he supervised the actual paper work and closing, and inferred this was a necessity for one to be the procuring cause. Similar arguments were made in Ingram v. Clemens, Mo.App., 350 S.W.2d 823, and we held, 1. c. 824: "* * * it was necessary for the Court to give the instruction in order to explain to the jury that plaintiff need not negotiate the actual terms of the sale, if he actually was the procuring cause." See also Barnum v.

Hutchens Metal Products, Inc., Mo., 255 S.W.2d 807, 808. Instruction No. 4 was proper.

■ Instruction No. 6 was: "Your verdict must be for defendant, Mrs. Bailey, unless you believe plaintiff, Mr. Wright, was the inducing and procuring cause of Glenn Colhour purchasing said farm." Had the sellers denied owing the commission, this instruction would have been presumptuous and improper. However, in view of the original assumption of the parties, including the sellers, that at least one of them had to have been the procuring cause, Instruction No. 6 was a concise and proper converse of Wright's verdict directing instruction.

■ The last argument of Wright is that Bailey failed to make a submissible case, and in determining this question, we must consider the evidence in a light most favorable to her contentions. An effort is made to justify this argument because Wright contends he completed the sale by convincing the buyer to buy, induced the lender to lend, obtained the signatures on the contract, had the buyer pay the 10% down and the lender to pay the balance. Most of the points within the argument are covered by the ruling in the Ingram case, supra, reference the details of closing the transaction, and it was for the jury to determine if Wright had "convinced the buyer to buy." Additionally, the activities of closing day are less important because Colhour said he had decided to buy the day before on December 31. What evidence is there to sustain a verdict for Bailey? Baileys had made the initial contact with the purchaser on December 23 and had shown the property. Mr. Bailey, as a graduate in agriculture, had shown the farm as a "good buy." They did not cancel the appointment of December 24 but waited an extra hour on the day before Christmas before deciding the purchasers were not coming. Although they did not call purchasers on Christmas Day or the next day, Sunday, they did call on Monday, December 27. Mr. Bailey recalled the purchaser planned to do nothing until after

the holidays. Mr. Speckman advised them on New Year's Eve that the farm was sold but apparently did not mention to whom. Since the purchaser was, in fact, their hot prospect, the jury could certainly have found Baileys had not previously abandoned their efforts. The purchaser said he was interested in the farm on December 23 and there is nothing in the record to show this interest waned prior to the contract date of January 1. The purchasers had looked at the farm at least three times before they called Wright. The jury properly could have determined that the call to Wright resulted from irritation at Bailey's not waiting more than an hour on the appointment date, and that the call to him was not because of a present lack of interest in the farm. This feeling must have continued at least until the call of December 27, because he did not tell Baileys he had looked again the day before on December 26 with Wright nor did he inform Mr. Speckman on January 1 that Baileys had shown the farm. Although purchaser told Wright, "I've been here before," no inquiry was made as to who had shown it. Wright had shown the inside of the residence by going in a window, but nothing else in addition to Bailey's effort, except some reference to kind of dirt, was shown. The jury could have decided the reason purchaser stayed with Wright was the suggestion he could get a reduction in price. The short lapse of time from December 23 to December 31, the date a decision to buy was made, was significant as the jury could have drawn the inference that Bailey's efforts created a continuous interest culminating in the purchase. Other trips to the farm during this short period without either Bailey or Wright contributed to the establishment of a jury issue.

The applicable law on the question involved is well established, but, "Each case of this character depends upon its own particular facts." A. T. Earls Real Estate & Loan Co. v. Wise, Mo.App., 254 S.W.2d 677, 678. Even though both circumstances are important matters for consideration, neither that broker first contacting the ultimate purchaser, Warren v. Fritsch, Mo. App., 14 S.W.2d 29, 30, nor the broker handling the details of closing the sale, Ingram v. Clemens, supra, have an absolute right to the tendered commission. Both of these factors, along with other factual evidence presented, must be resolved to conclude who was the "procuring cause of the sale," and the time of the brokers' arrival on the scene is not controlling. Holman v. Fincher, supra; Blackburn-ens., Inc. v. Roberts, Mo.App., 379 S.W.2d 630; Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319; United Farm Agency v. Cook, Mo. App., 283 S.W.2d 6.

Of course, the moment of actual decision to buy and the factors controlling that decision rest peculiarly in the mind of the purchaser. With his testimony being given in their presence, it was a proper task for the jury to determine this fact, and there is nothing in the record to justify our finding that they did not make a correct determination.

The judgment is affirmed.

All concur.