STATE of Missouri, Plaintiff-Respondent,

v.

Larry Darnell LONG,
Defendant-Appellant.

No. 36587.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 16, 1975.

Charles D. Kitchin, Public Defender, James C. Jones, Joseph W. Warzycki, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Chief Counsel, Timothy Verhagen, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant-appellant Larry Darnell Long was found guilty by a jury of robbery in the first degree by means of a dangerous and deadly weapon. The trial court found him to be a second offender and imposed sentence at fifteen (15) years imprisonment. He appeals. For reasons hereinafter stated we affirm.

Since appellant does not question the sufficiency of the evidence, only those facts necessary for the disposition of the points raised on this appeal need be related.

The evidence produced by the state reasonably supports the following statement of facts:

At approximately 4:26 P.M., on October 29, 1973, Melvin White, an employee of the AFCO Wholesale Grocery Company located at 5022 Martin Luther King Drive, heard a knock at the store's rear door. Through a window in the door he could see two men standing outside. He called the manager, Frank Friedman, to let them in.[1] Mr. Friedman admitted the two men and "they immediately pulled guns." They directed Friedman and White to lie on the floor. Two other employees, James Lee and William Parker and some customers who were present were directed to the "counter area" and held there at gunpoint. One of the robbers, subsequently identified as defendant Long, was wearing a gray overcoat, a black hat, and was carrying a revolver. His accomplice, later identified as Rodney Jones, wore a black overcoat, a multi-colored hat, and was carrying an automatic pistol. The two men went through Friedman's pockets and ordered him to give them money. Jones ordered Friedman to get up and marched him to the cash register area. The defendant guarded the others at the

---

1. Mr. Friedman testified that the front and back doors were normally kept secured and a person had to identify himself before he could gain entrance.

rear of the store. Jones took some money out of the cash register and then went through Friedman's desk drawers, removing some money from Friedman's wallet which was in one of the drawers. The defendant then forced Friedman to the warehouse area of the store where he was forced to lie down on the floor and was threatened with his life unless he gave them some more money.

At that point, Detective Anthony Pona entered the store and observed that there was a holdup in progress. Pona ordered the robbers to drop their guns, but instead they ran out the back door with Pona in pursuit. Pona chased the two through an alley, firing a couple of shots in their direction as they ran. At the mouth of the alley Jones and the defendant split up. Pona pursued the defendant without losing sight of him until he finally caught up to him at a nearby White Castle restaurant. Defendant dropped his revolver as he entered the White Castle building. At the trial Detective Pona testified that the revolver dropped by defendant was fully loaded and cocked when he found it. The state's attorney asked Pona if the ammunition was live over defendant's objection. Pona answered that the ammunition was live. Defendant's basis for his objection was that only a firearms expert was qualified to answer that question.

While Detective Pona was in the process of apprehending the defendant, Patrolman Jerry Jones arrived at the AFCO store. He heard gunshots and then spotted Rodney Jones emerging from the alley. He chased Jones through the streets and apprehended him a few minutes later. Both suspects were brought back to the AFCO store and were identified by Friedman and his employees. At the trial, Patrolman Jones was asked by the state's attorney whether Rodney Jones, at any time after his arrest, stated to him that the defendant was not involved. Patrolman Jones answered that he had not. The defendant objected to the question and answer. The trial court initially sustained the objection on hearsay grounds. The defendant also pointed out that there had been no indication that the suspect Jones had been apprised of his *Miranda* rights at the time. The trial court subsequently reversed its decision and overruled the objection on the assurance that Rodney Jones was to testify later.

Testifying in his own behalf, the defendant stated that: (1) he was at the White Castle at approximately 4:30 P.M., on October 29, 1973, (2) he did not have a hat or coat on, (3) Detective Pona entered the White Castle with his gun drawn and arrested him while he was standing in line for food, (4) other officers standing outside gave him the gray overcoat and black hat and made him put them on, and (5) Detective Pona then escorted him to the AFCO grocery. Mary Long, the defendant's mother, testified that defendant was living at home at the time of the robbery and that he did not, at that time, own a gray overcoat or a black hat like the one allegedly worn by him during the robbery. Rodney Jones testified that it was not the defendant, who participated with him in the robbery, but a friend of Jones' named Kevin. On cross-examination, Jones was asked whether at any time after his arrest he told the police or any of the other people present at the grocery that defendant was not involved. Jones answered that the officers didn't ask him any questions or give him any time to talk. Jones had previously pled guilty to a charge arising out of the robbery of the AFCO store.

In rebuttal, the State presented Margaret Bresnahan, the official court reporter, who had transcribed Jones' guilty plea. Reading from the notes that she had taken on July 30, 1974, when Jones entered his plea, Ms. Bresnahan testified that after the Circuit Attorney had finished reading the facts which the State hoped to prove if the case went to trial, that Jones indicated that the facts were correctly stated. Among the facts read was the statement that Jones had committed the robbery along with Long. Ms. Bresnahan further testified that

the trial judge then specifically asked Jones if he committed this robbery along with Larry D. Long, to which Jones answered in the affirmative.

When the trial began on September 24, 1974, the State introduced as its first witness William Swyers, a laboratory technician assigned to the Graphic Arts Section. Defendant objected to the testimony of Swyers on the ground that he had not been formally endorsed as a witness. The trial court overruled the objection and permitted Swyers to testify.

On this appeal, appellant raises four points: (1) that the trial court erred in denying defendant's motion for a mistrial when the State opened its case with Mr. Swyers because Mr. Swyers was an unendorsed witness and defendant was prejudiced by the lack of endorsement, (2) that it was error for the trial court to overrule defendant's objection to the prosecutor's asking Patrolman Jones "whether he heard Rodney Jones state after his arrest that defendant Long was not his partner in the commission of the robbery," because the question solicited hearsay testimony and the answer was prejudicial to defendant's case, (3) that the trial court erred in overruling defendant's objection to the testimony of Detective Pona that the gun allegedly used by the defendant "contained live ammunition and was a deadly weapon," because these subjects were not susceptible of opinion testimony and defendant was prejudiced by the testimony, and (4) that it was plain error for the trial court to "comment on the evidence to the effect that the jurors themselves knew the ammunition was live," because "this concerned a matter directly in issue" and "it was highly prejudicial to the defendant."

In his first point, appellant contends that he was prejudiced by the failure of the State to endorse Mr. William Swyers as a witness as required by Supreme Court Rule 24.17. It appears from the record that on September 16, 1974, eight (8) days prior to the trial, the State endorsed as a witness "Technician, Graphic Arts Section Wilbert Shatmer." On September 24, 1974, the State began its case by calling as a witness Mr. William Swyers who is also a graphic arts technician with the St. Louis Police Department. Mr. Swyers was to testify concerning two diagrams he drew of the scene of the crime and the surrounding area. Defense counsel objected to this witness on the grounds that he had never been formally endorsed. In the colloquy which followed at the Bench, defense counsel admitted several times that he was aware of the content of the testimony that was to be presented by Mr. Swyers and was not surprised by the fact that the State was going to "put a plat man on." Defense counsel further admitted that he had never made any attempt to contact anyone from the Graphic Arts Section including Wilbert Shatmer. Defense counsel maintained that the basis of the objection was that he believed Wilbert Shatmer was going to testify and the man in fact introduced, Mr. Swyers, was not an endorsed witness.[2] The court overruled the objection.

■ Rule 24.17 provides that the names of all material prosecution witnesses shall be endorsed on any indictment or information filed. The names of other witnesses may be added at any time upon order of the court and after notice to the defendant or his attorney. There is no doubt that the trial court has broad discretion in permitting the endorsement of the names of additional witnesses, *State v. Thost,* 328 S.W.2d 36, 38 (Mo.1959), and a judgment of conviction will not be reversed because of a late, irregular or imperfect endorsement absent

2. In the discussion at the Bench following defense counsel's objection, the prosecutor indicated that he did not know which of the two men, Shatmer or Swyers, was going to make the drawings, "so I put down technician." In his brief, appellant admits that,

". . . Apparently, the Assistant Circuit Attorney had mistakenly endorsed the name of one Wilbert Shatmer, another technician in the graphic arts section, as the witness who was to testify about the crime scene. . . ."

an abuse of that discretion. *State v. Strawther,* 476 S.W.2d 576, 579 (Mo.1972); *State v. Fraley,* 369 S.W.2d 195 (Mo.1963) and *State v. Whaley,* 512 S.W.2d 431 (Mo. App.1974).

In *State v. Fraley,* supra, the trial court permitted the vice president of a bank to testify for the State although his name was not endorsed on the information that was filed. The record in that case indicated that five (5) days prior to trial the prosecutor, by leave of court, endorsed "Cashier, American National Bank, 6637 S. Kingshighway" on the information. The Missouri Supreme Court ruled that although the endorsement of a witness by the title of the office he holds in an organization and not by name was irregular inasmuch as the defendant had not complained of the omission of the name and did not attempt to discover the name of the proposed witness and because the bank vice-president who did testify, though not a "cashier," could be expected to have as much knowledge of the particular facts as a cashier, permitting him to testify was not an abuse of discretion.

In *State v. Whaley,* supra, the information referred to a witness only by his middle and surnames. This court found no abuse of discretion on the part of the trial court in permitting the witness to testify where the defendant failed to prove that he was surprised by the testimony or demonstrate any prejudice by such testimony. In so ruling, we rejected the defendant's position that imperfect endorsement of a witness rendered that witness unendorsed and, more importantly, we held that ". . . the simple allegation that an unendorsed witness was allowed to testify is not sufficient to warrant a finding of reversible error by the trial court."

■ We find no abuse of discretion in permitting William Swyers to testify concerning two diagrams which he drew of the scene of the crime and the surrounding area. The defendant was aware that a representative of the Graphic Arts Section was going to testify and was also aware of the content of the testimony that was to be presented. Although Wilbert Shatmer was endorsed as the Graphic Arts Technician who would testify at trial, defense counsel admitted that he had not made any attempt to contact Mr. Shatmer or anyone else from the Graphic Arts Section prior to trial. Furthermore, we point out that it was Mr. Swyers who prepared the diagrams of the scene of the crime and the surrounding area. We therefore, fail to see how defendant has been prejudiced by the fact that it was Swyers and not Shatmer who testified concerning these diagrams. Under the circumstances, in the absence of surprise or prejudice, we find no abuse of discretion in permitting Mr. Swyers to testify.

Appellant's second point is not so easily disposed of. At trial, on direct examination, the prosecutor asked Officer Jerry Jones whether Rodney Jones, the alleged accomplice of the defendant whom Officer Jones arrested shortly after the robbery, stated at any time after his arrest "that Mr. Long was not the individual with him at the time of the holdup. . . ." The witness replied "No." Defense counsel objected and the court sustained the objection. A discussion at the Bench followed. The trial court indicated that it had sustained the objection on hearsay grounds.[3] Thereafter, upon the "assurance"[4] that Rodney Jones was going to testify later, the trial court reversed its ruling and overruled the objection.

3. Defense counsel interjected that he would extend his objection to the ground that there was no showing that Rodney Jones ". . . was given any rights before he made this statement." The court rejected this basis stating "those rights are personal to the individual . . ."

4. In the discussion that took place at the Bench, the prosecutor indicated that Rodney Jones was going to testify later on during the trial. The trial court then asked defense counsel if Jones would, in fact, testify. Defense counsel replied, "He may." The prosecutor then stated, "He did last time," apparently referring to defendant's previous trial for the same robbery, which resulted in a hung jury. The trial court then overruled the objection.

On this appeal, appellant contends in this regard that (1) "the question solicited hearsay testimony" and (2) "the answer was highly prejudicial to the defendant." Thus, the only objection to the testimony which appellant has preserved, from the trial, through his motion for new trial and on this appeal is the hearsay objection.

■ We are in agreement with appellant to the extent that he contends that the question asked of Officer Jones solicited hearsay testimony. The only fact established by the question and answer was that Rodney Jones was silent concerning the complicity of the defendant in the robbery. Evidence of Rodney Jones' silence in this regard was being offered in order to take advantage of the inference that if Jones did not verbally exculpate the defendant, then defendant must, in fact, have been his accomplice.[5] Thus, viewed in the context of the prosecutor's question, Jones' silence was presented as an out of court assertion that the defendant was, in fact, a participant in the robbery. Viewed in this light, we cannot say, as respondent urges, that the evidence of Jones' conduct (i. e., silence) while returning to the scene "was elicited solely to prove the fact of its occurrence." Rather, we conclude that this evidence was offered to prove the truth of the matter asserted and in this vein must be regarded as hearsay. Thus, it was error to admit such testimony into evidence.

We turn now to the question of whether the admission into evidence of this hearsay testimony "was [so] highly prejudicial to the defendant" as to constitute reversible error.

The objection to the admissibility of hearsay testimony stems from its general unreliability. The policy reasons behind the exclusion of such evidence are, generally speaking (1) that there is no opportunity for cross-examination, (2) that the statements offered were not made under oath, and (3) the jury has no opportunity to judge the credibility of those making the statements.

At trial, Rodney Jones testified on behalf of the defendant that defendant was not his accomplice. Jones had previously pleaded guilty to a charge arising out of the robbery. On cross-examination, Jones was asked if he had ever told the police "or anybody else" that defendant was not his accomplice and he replied that he had not. Jones explained that the police did not give him the opportunity to say anything. This testimony was not objected to. Thus, Rodney Jones' recollection of his conduct while returning to the scene of the crime corroborated the testimony previously given in this regard by Officer Jones that Rodney Jones at all times after his arrest remained silent concerning the complicity of the defendant in the robbery. The fact that Rodney Jones testified to this effect while under oath, subject to cross-examination and under circumstances such that the jury could judge his credibility seems to cure any defect in the testimony of Officer Jones arising out of the unreliability of the evidence. While we decline to hold that the technical impropriety in admitting Officer Jones' hearsay testimony was erased, the same facts having been elicited by other and competent evidence, the appellant was not thereby prejudiced.[6]

■ Thirdly, appellant contends that the trial court erred in permitting testimony from one of the arresting officers (Detective Pona) to the effect that the gun used by defendant was a dangerous and deadly weapon and was loaded with live ammunition. Essentially, appellant com-

5. We have some question as to the probative value of this evidence in light of the fact that Rodney Jones had a constitutional right to remain silent following his arrest. However, we need not consider this matter on this appeal inasmuch as defendant did not challenge the relevancy of the evidence either at trial or in his motion for new trial. See McCormick on Evidence, § 184, pp. 433–434 (2d Ed. 1972).

6. We express no opinion as to the propriety of attempting to impeach a defense witness in the State's case-in-chief prior to the defense witness testifying.

**820**

plains that Detective Pona was permitted to give his opinion regarding the dangerousness of the gun under circumstances which did not lend itself to opinion testimony. Whether Detective Pona's testimony was in fact an opinion concerning the dangerousness of the gun used by defendant in the robbery is of no consequence. It was sufficient for the State to prove that the robbery was accomplished by the use of a gun. *State v. Payne,* 452 S.W.2d 805, 808 (Mo. 1970). A gun in and of itself is considered a dangerous and deadly weapon whether it is, in fact, operative as a firearm or not. See *State v. Dorsey,* 491 S.W.2d 301 (Mo.1973). Thus, we conclude that, inasmuch as the issue of the dangerousness of the weapon was not before the jury, Detective Pona's testimony concerning the weapon was not prejudicial and a reversal is not required.

■ Finally, appellant contends that the trial court erred in making the comment in the presence of the jury that "the jurors themselves know it [the ammunition found in the defendant's gun] is live ammunition." This assignment of error has not been properly preserved for appeal. The record discloses that no objection was made to the court's comment during trial, nor is there any claim of error covering such comment in appellant's motion for new trial. Appellant urges, however, that we review this point as "plain error." Supreme Court Rule 27.20(c), V.A.M.R., provides that plain errors may be reviewed, though not properly preserved, when the court deems that "manifest injustice or miscarriage of justice" has resulted therefrom.

■ As was pointed out previously, the question of whether the ammunition found in defendant's gun was live or expended is immaterial to the issue of whether a gun is a dangerous and deadly weapon, as ". . . a pistol is universally classified as a dangerous and deadly weapon even though not loaded." *State v. Dorsey,* supra, at 304. Therefore, while the court's comment may have led the jury to believe that the defendant's gun was loaded with live ammunition

this cannot reasonably be said to have influenced the jury to the detriment of the defendant. See *State v. Brotherton,* 266 S.W.2d 712 (Mo.1954) and *State v. Hopkins,* 500 S.W.2d 264 (Mo.App.1973).

Moreover, in light of the overwhelming evidence against the defendant, including positive identification by four (4) eyewitnesses, we cannot say that manifest injustice or a miscarriage of justice has resulted from the trial court's comment on an immaterial issue.

We rule this point against appellant.

We have reviewed the record and considered the authorities cited by both appellant and respondent and, finding no prejudicial error, we affirm the judgment of the trial court.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.